1  Erika A. Kelton (State Bar No. 133300)
   Larry P. Zoglin (State Bar No. 87313)
2  PHILLIPS & COHEN LLP
   2000 Massachusetts Ave., NW
3  Washington, DC. 20036
   Telephone: (202) 833-4567
4  Fax: (202) 833-1815
   ekelton@phillipsandcohen.com
5
   PHILLIPS & COHEN LLP
6  131 Steuart St., Suite 501
   San Francisco, CA 94105
7  Telephone: (415) 836-9000
   Fax: (415) 836-9001
8  lpz@pcsf.com
9  *Attorneys for Qui Tam Plaintiff James Garbe*

FILED
CLERK, U.S. DISTRICT COURT

JUL 1 6 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA, and the )   Case No. _____
    STATES OF CALIFORNIA, DELAWARE,  )
13  FLORIDA, GEORGIA, HAWAII, ILLINOIS, )   CV08-04669 FMC (SHx)
    INDIANA, LOUISIANA,              )
14  MASSACHUSETTS, MICHIGAN, NEVADA, )
    NEW HAMPSHIRE, NEW JERSEY, NEW   )   COMPLAINT FOR VIOLATION OF
15  MEXICO, NEW YORK, OKLAHOMA,      )   FEDERAL FALSE CLAIMS ACT [31
    RHODE ISLAND, TENNESSEE, TEXAS,  )   U.S.C. §3729 et seq.]; CALIFORNIA FALSE
16  VIRGINIA, and WISCONSIN, ex rel. JAMES )   CLAIMS ACT [Cal. Govt Code §12650 et
    GARBE,                           )   seq.]; CALIFORNIA STATE INSURANCE
17                                   )   FRAUDS PREVENTION ACT [Cal. Ins.
                 Plaintiffs,         )   Code §1871 et. seq.]; DELAWARE FALSE
18                                   )   CLAIMS AND FALSE REPORTING ACT
                                     )   [6 Del. C. §1201]; FLORIDA FALSE
19  vs.                              )   CLAIMS ACT [Fla. Stat. Ann. §68.081 et
                                     )   seq.]; GEORGIA FALSE MEDICAID
20  KMART CORPORATION,               )   CLAIMS ACT [Ga. Code Ann. §49-4-168 et
                                     )   seq.]; HAWAII FALSE CLAIMS ACT [Haw.
21               Defendant.          )   Rev. Stat. §661-21 et seq.]; ILLINOIS
                                     )   WHISTLEBLOWER REWARD AND
22                                   )   PROTECTION ACT [740 Ill. Comp. Stat.
                                     )   §175 et. seq.]; ILLINOIS INSURANCE
23                                   )   CLAIMS FRAUD PREVENTION ACT [740
                                     )   Ill. Comp. Stat. §92]; INDIANA FALSE
24                                   )   CLAIMS AND WHISTLEBLOWER
                                     )   PROTECTION ACT [Ind. Code Ann. §5-11-
25                                   )   5.5-1 et seq.]; LOUISIANA MEDICAL
                                     )   ASSISTANCE PROGRAMS INTEGRITY
26                                   )   LAW [La. Rev. Stat. §437 et. seq];
                                     )   MASSACHUSETTS FALSE CLAIMS LAW
27                                   )   [Mass. Gen Laws ch.12 §5 et seq.];
                                     )   MICHIGAN MEDICAID FALSE CLAIMS
28  _____ )   ACT [Mich. Comp. Laws. §400.601 et seq.];

1
Complaint

{00005890; 1}

cardiovascular, diabetes, pain, psychiatric illnesses, gastrointestinal disorders and other common ailments. RMP prices apply only to prescription generics listed on the formulary.

5. Kmart's RMP program is not a special, limited or a one-time offer. Any pharmacy patron is eligible to participate in the program, and the company encourages its pharmacists to utilize the program to attract all customers.

6. Kmart's $5, $10 and $15 prices for 30, 60 and 90 day prescriptions represent the company's "usual and customary" prices to the cash-paying public for listed generics. The company does not limit the eligibility for, or duration of the availability of, RMP prices other than to require cash payment.

7. Kmart's generic pricing program is a boon for consumers. However, despite the limitations of numerous federal and state pharmacy benefit programs on prescription drug reimbursements to amounts no greater than the "usual and customary" prices to the cash-paying public, Kmart knowingly fails to report the RMP price – its true "usual and customary" price - on claims for reimbursement submitted to those government programs. Instead, Kmart submits reimbursement claims for generic prescriptions seeking amounts that are often many multiples of these "usual and customary" charges.

8. The practices alleged in this Complaint defraud every insurer – both public and private – that reimburses pharmacy drugs using a charge-based formula, i.e., a formula that reimburses drugs based directly or indirectly on the provider's charges for the drugs. Federal and state health care programs that use charge-based formulas to reimburse prescription drugs include Medicaid (which subsidizes the purchase of more prescription drugs than any other program in the United States), the Public Health Services program, federal and state workers' compensation programs, and many other programs.

9. The Medicare Part D program is also affected by Kmart's fraudulent scheme. Although the prescription drug prices negotiated by the Part D plan are typically the prices for beneficiary purchases at network pharmacies, there are exceptions. First, pharmacies may only charge "out-of-network" Part D beneficiaries their "usual and customary" price for prescription drugs. Medicare Part D Prescription Drug Benefit Manual, Ch. 5, Section 10.2; 42 C.F.R. 423.124(a) (hereafter the "Manual").

4
Complaint

10.     In addition, even in-network pharmacies must charge their cash "usual and customary" price, notwithstanding the Plan's negotiated price when it offers a lower cash price for a prescription drug throughout the benefit year. Id. at Ch. 14, n.1. In such instances, the lower price is considered the "usual and customary" price and not a one-time lower cash price. "Part D sponsors consider this lower amount to be "usual and customary" and will reimburse . . . on that basis." Id. The Manual specifically cites WalMart's $4 generic plan, which is similar in all material respects to Kmart's RMP program. "This means that both the [Part D] Plan and the beneficiary are benefiting from the WalMart 'usual and customary' price, and the discounted WalMart price of the drug is actually offered within the Plan's Part D benefit design. Therefore, the beneficiary can access this discount at any point in the benefit year, the claim will be adjudicated through the Plan's systems, and the beneficiary will not need to send documentation to the plan to have the lower cash price count toward TrOOP." Id. ("TrOOP" refers to the "true out of pocket cost" to the beneficiary.)

11.     Medicare Part D also requires that pharmacies that dispense drugs covered by Part D must advise beneficiaries of any price differential between the price of the drug to the enrollee and the price of the lowest-priced equivalent generic available at the pharmacy. MMA 1860D-4 (k)(1). A Part D beneficiary's purchase at a lower cash price must be reported as the "true out of pocket cost" for that purchase, rather than a higher negotiated price.

12.     The Medicare Part D program and its beneficiaries suffer further damage from Kmart's fraudulent practices. Because the "doughnut hole" in Part D coverage, (the amount between $2,250 and $3,600 in prescription drug costs for which beneficiaries receive no coverage), is determined by the amount of prescription drug reimbursements, beneficiaries who purchase generics included in Kmart's RMP program are pushed to – and through – the doughnut hole much more rapidly than they should be. For example, a Part D beneficiary who is charged $40 by Kmart for a 90-day generic prescription that is only $15 under the RMP program, arrives at the $2,250 doughnut hole threshold more quickly than if Kmart properly charged its true "usual and customary" price ($15). As a result of the company's inflated prices, Part D recipients are forced to carry the full cost burden of their prescription drugs much earlier (and to a greater extent) than they otherwise would.

5
Complaint

{00005890; 1}

13.     Kmart's inflated generics pricing causes further, direct damage to the federal government, since Medicare directly bears significant additional "catastrophic" costs once a beneficiary's $3,600 doughnut hole "cap" has been satisfied.

14.     Every fraudulently inflated pharmacy bill or claim for payment knowingly submitted to a charge-based, government prescription drug program violates the Federal False Claims Act ("FCA") and the FCA's state-law counterparts.

15.     The FCA was originally enacted during the Civil War, and was substantially amended in 1986.  Congress enacted the 1986 amendments to enhance and modernize the government's tools for recovering losses sustained by frauds against it after finding that federal program fraud was pervasive.  The amendments were intended to create incentives for individuals with knowledge of fraud against the government to disclose the information without fear of reprisals or government inaction, and to encourage the private bar to commit resources to prosecuting fraud on the government's behalf.

16.     The FCA provides that any person who presents or causes to be presented false or fraudulent claims for payment or approval to the United States Government, or knowingly makes, uses, or causes to be made or used false records and statements to induce the United States to pay or approve false and fraudulent claims, is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the federal government.

17.     The FCA allows any person having information about false or fraudulent claims to bring an action on behalf of the government, and to share in any recovery.  The FCA requires that the complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to enable the United States (a) to conduct its own investigation without the defendant's knowledge, and (b) to determine whether to join the action.

18.     As set forth below, defendant's actions alleged in this Complaint also constitute violations of the California False Claims Act, Cal. Govt Code §12650 et seq.; the California Insurance Frauds Prevention Act, Cal. Ins. Code §1871 et seq.; the Delaware False Claims and False Reporting Act, 6 Del. C. §1201 et seq.; the Florida False Claims Act, Fla. Stat. Ann. §68.081 et seq.; the Georgia False Medicaid Claims Act, Ga. Code Ann. §49-4-168 et seq.; the Hawaii False Claims Act, Haw. Rev. Stat. §661-21 et seq.; the Illinois Whistleblower Reward and

{00005890; 1}

Protection Act, 740 Ill. Comp. Stat. §175/1-8; the Illinois Insurance Claims Fraud Prevention Act, 740 Ill. Comp. Stat. §92; the Indiana False Claims and Whistleblower Protection Act, Ind. Code §5-11-5.5 et seq.; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §437 et. seq; the Massachusetts False Claims Law, Mass. Gen. Laws ch. 12 §5 et seq.; the Michigan Medicaid False Claims Act, Mich. Comp. Laws §400.601 et seq.; the Nevada False Claims Act, Nev. Rev. Stat. Ann. §§357.010 et seq.; the New Hampshire False Claims Act, N.H. Rev. Stat. Ann. §167:61 et seq.; the New Jersey False Claims Act, N.J. Stat. § 2A:32C-1 et seq.; the New Mexico Medicaid False Claims Act and the New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. § 27-2F-1 et seq. and N.M. Stat. Ann. §41-14-1 et seq.; the New York False Claims Act, N.Y. State Fin. §187 et seq.; the Oklahoma Medicaid False Claims Act, 63 Okl. St. § 5053 et seq.; the Rhode Island False Claims Act, R.I. Gen. Laws §9-1.1-1 et seq.; the Tennessee False Claims Act and Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§4-18-101 et seq. and 71-5-181 et seq.; the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. §§36.001 et seq.; the Virginia Fraud Against Taxpayers Act, Va. Code Ann. §§8.01-216.1 et seq.; and, the Wisconsin False Claims for Medical Assistance Act, Wis. Stat §20.931 et seq.

19.     Based on these provisions, qui tam plaintiff and relator James Garbe seeks to recover all available damages, civil penalties, and other relief for federal and state violations alleged herein, in every jurisdiction to which defendant's misconduct has extended.

## II.     INTRODUCTION

20.     Residents of the United States spend billions of dollars each year on prescription drugs. A large share of the cost of these drugs is paid by the federal and state governments through a variety of health care programs. Expenditures for prescription drugs have far outpaced other health care costs, and are the fastest growing cost of health plans funded by the state and federal governments.

21.     Congress and the States have enacted laws designed to control these soaring costs. Of particular relevance to this Complaint are provisions of the law (1) that prohibit excessive charging of the government for prescription drugs and (2) that impose limitations on the reimbursement rates paid for these drugs by government health care programs. With regard to the former, statutes and regulations prohibit a provider of drugs (including a pharmacy) from billing a federal or state health care program substantially in excess of the provider's usual charge to the

{00005890; 1}

public for these drugs.

22.     With regard to restrictions on reimbursement rates, statutes, regulations, and health care provider agreements limit the maximum amount payable by federal or state health care programs for prescription drugs.  Although each program's reimbursement formula differs somewhat, many programs place the following cap on payments for pharmacy drugs:  the payment may not exceed the cash price that the pharmacy charges the general public for the drug (plus a dispensing fee).  This maximum price is variously expressed as the pharmacy's "usual price," the pharmacy's "usual and customary price," the pharmacy's "price to the general public," or similar phrase; but the meaning in each instance is clear:  the pharmacy cannot charge the general cash-paying public one price and be reimbursed by the government at a higher price.

23.     This Complaint alleges that Kmart circumvented these laws by fraudulently seeking reimbursement for generic prescription drugs at amounts that were substantially more than the company's "usual and customary" charges.

## III.    PARTIES

### A.    The Relator

24.     Plaintiff/relator James Garbe ("Relator") is a resident of Sylvania, Ohio.  Mr. Garbe holds professional pharmacist licenses in Ohio and Michigan, and has more than 40 years of pharmacy experience.  He has been employed by Kmart's Defiance, Ohio store since May 2007.

### B.    The Defendant

25.     Defendant Kmart Corporation is a Michigan corporation with corporate headquarters in Troy, Michigan.  Kmart Corporation is a subsidiary of Sears Holdings Corporation, which is headquartered in Hoffman Estates, Illinois.  Kmart operates discount retail stores, many of which offer pharmacy services.  Kmart pharmacies are located in 46 states (there are no locations in Alaska, Connecticut, Vermont and North Dakota), Puerto Rico and the Virgin Islands.  Kmart also owns and operates the AmeriKind Pharmacy Network PBM.  Kmart Corporation's pharmacy operations are primarily run out of Sears Holding Corporation's Hoffman Estates location.

## IV.    JURISDICTION AND VENUE

26.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1367, and 31 U.S.C. §3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730.  In addition,

{00005890; 1}

31 U.S.C. §3732(b) specifically confers jurisdiction on this Court over the state law claims asserted in Counts II, IV through VIII, and X through XXIV of this Complaint. Jurisdiction over the state law claims asserted in Counts III and IX is based on this Court's supplemental jurisdiction. Under 31 U.S.C. §3730(e), and under the comparable provisions of the state statutes listed in ¶18 above, there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint.

27.    Personal jurisdiction and venue are proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395(a) and 31 U.S.C. § 3732(a), as the defendant is found in, has or had an agent or agents, has or had contacts, and transacts or transacted business in this judicial District.

## V.    PAYMENT FOR PRESCRIPTION DRUGS UNDER GOVERNMENT HEALTH CARE PROGRAMS

28.    Because of the significant impact of prescription drug costs on the federal and state treasuries, the federal and state governments have implemented a number of measures to contain drug costs payable by government health care programs. Of particular relevance to this Complaint are two types of cost-containment measures: (1) prohibitions against excessive charges, and (2) limitations on the maximum reimbursement payment by federal and state health care programs.

### A.    The Excessive Charges Exclusion Authority

29.    By statute, the Secretary of Health and Human Services ("HHS") is authorized to exclude from participation in any federal health care program any provider or supplier that engages in certain prohibited practices when billing Medicare or Medicaid for goods or services. Among the practices that justify exclusion of the provider are charging the government "for items or services furnished substantially in excess of such [provider's] usual charges." 42 U.S.C. § 1320a-7(b)(6). Excessive charging is treated on a par with charging the government for goods or services that are not medically necessary, which also justifies exclusion from any federal health care program. See id.

30.    The exclusion for excessive charging is intended to protect the Medicare and Medicaid programs – and the taxpayers – from medical providers and suppliers that charge the Medicare or Medicaid programs substantially more than they charge the general public. This exclusion is consistent with the mandate of section 1156 of the Social Security Act, which requires

{00005890; 1}

that all providers of medical services and supplies paid for by the federal government must provide those items "economically." 42 U.S.C. §1320c-5(a)(1). A pharmacy that charges the government a price for prescription drugs that is substantially higher than the pharmacy's price to the general public does not provide the drugs "economically" to the government.

**B.      Limitations On Prescription Drug Reimbursement Under Medicare, Medicaid and Other Government Health Care Programs**

31.      In addition to the general prohibition on excessive charges discussed above, various federal and state laws, as well as federal and state health care provider agreements, limit the maximum reimbursement rate that different health care programs will pay for covered drugs. Although the reimbursement formula varies depending upon the program, most programs place the following cap on reimbursement payments for pharmacy drugs: government reimbursement may not exceed the pharmacy's "usual and customary" price for the drugs. This cap on the reimbursement amount is sometimes expressed by other phrases, such as the pharmacy's "usual price," the pharmacy's "price to the general public," or other similar phrase. In this Complaint the phrases "usual and customary price" "usual price," and "price to the general public" will be used interchangeably.

32.      Examples of programs that cap drug reimbursement at the pharmacy's usual and customary price are the Medicaid program, the Medicare Part D program, the Public Health Services Program, and federal and state workers' compensation programs, among others. These programs are discussed below.

**1.      Medicaid Limits On Prescription Drug Reimbursement**

33.      Medicaid is a public assistance program providing for payment of medical expenses for the poor and disabled. Medicaid reimburses the purchase of more prescription drugs than any other program in the United States. Most prescription drugs reimbursed by Medicaid are dispensed by pharmacies.

34.      Funding for Medicaid is shared between the federal and state governments. The federal Medicaid program is administered by the federal Centers for Medicare and Medicaid Services ("CMS"), formerly the Health Care Financing Administration ("HFCA"). Each state administers its own Medicaid program, although the federal Medicaid statute sets forth the

10
Complaint

{00005890; 1}

minimum requirements that each state must follow to qualify for federal funding.

35.     Reimbursement for prescription drugs under the Medicaid program is available for "covered outpatient drugs." 42 U.S.C. §§1396b(i)(10), 1396r-8(k)(2), (3).  Covered outpatient drugs are drugs that are used for "a medically accepted indication." 42 U.S.C. §1396r-8(k)(3). Medicaid's minimum requirements for prescription drug reimbursements are set forth below.

### a.     General Medicaid Drug Reimbursement Methodology

36.     Each state Medicaid agency is required to submit a State Plan to CMS describing its payment methodology for covered drugs.  Federal regulations require that reimbursement for brand-name drugs with no generic substitutes ("single-source drug") drugs may not exceed the lower of (1) the pharmacies' "usual and customary charges to the general public" for the drugs or (2) the pharmacies' "estimated acquisition costs" of the drugs, plus reasonable dispensing fees. 42 C.F.R. § 447.331.

37.     CMS allows states flexibility in defining "estimated acquisition cost."  Most State Medicaid agencies base their calculation of estimated acquisition cost on a drug's average wholesale price ("AWP") discounted by a certain percentage.  A small number of states use "wholesale acquisition cost" plus a small percent to calculate estimated acquisition cost.

38.     For certain multiple-source drugs, which include generic drugs and their brand-name counterparts, states also use the Federal upper limit ("FUL") in determining reimbursement amounts. The Federal upper limit is established at 150 percent of the lowest-priced therapeutically and biologically equivalent drug (usually a generic drug).  In addition, states have the latitude to set an upper limit on reimbursement that is different from the FUL, referred to as the state maximum allowable cost ("MAC").  Individual states determine the drugs that are included in their MAC programs and the methods for calculating a drug's MAC.  The MAC is usually a multiple of the lowest published price.

39.     In summary, states use a variety of drug reimbursement methods.  In most cases, states reimburse for prescription drugs at the lesser of usual and customary price, estimated acquisition cost, Federal upper limit, or State maximum allowable cost.

40.     Importantly, Medicaid reimbursement for prescription drugs cannot lawfully

{00005890; 1}

exceed the pharmacy's usual and customary charge for those drugs. The billing practices alleged in this Complaint fraudulently inflate pharmacy bills above the pharmacies' usual and customary charge. Kmart's practices defraud governmental programs when a prescription drug's usual and customary charge is lower than the alternatives set forth in the state's reimbursement formula. In those instances, if a pharmacy fraudulently inflates its usual and customary price, the governmental program is caused to reimburse the pharmacy's bills at rates higher than the pharmacy is lawfully entitled to receive.

### b. State Medicaid Reimbursement Methodologies

41.     Every state's Medicaid drug reimbursement methodology provides for reimbursement of the ingredient cost of the drug and a dispensing fee. The list below describes the methodology for reimbursing the ingredient cost in those states that include "usual and customary" charges as part of their reimbursement methodology. The dispensing fee is typically in the range of three to five dollars per transaction, and is not specified below.

42.     For ease of reference, the abbreviations used in this section are repeated here:

Average Wholesale Price:  AWP

Federal Upper Limit (as defined by CMS):  FUL

Maximum Allowable Cost (as defined by the State):  MAC

Estimated Acquisition Cost (as defined by the State):  EAC

Wholesale Acquisition Cost:  WAC

### (1). Alabama Medicaid

43.     Reimbursement for covered multiple source drugs shall not exceed the lowest of:

(1)     FUL (as established and published by CMS) plus a reasonable dispensing fee;

(2)     Alabama EAC (defined as Medicaid's best estimate of the price providers are generally are paying for a drug);

(3)     Provider's usual and customary charge to the general public for the drug; or

(4)     State MAC

Complaint

{00005890; 1}

**(2).    Arkansas Medicaid**

44.    Reimbursement for covered multiple source drugs shall not exceed the lowest of:

(1)    FUL;

(2)    Provider's usual and customary charge; or

(3)    EAC.

**(3).    California Medicaid (Medi-Cal)**

45.    Reimbursement for any legend (i.e., prescription) drug is the lowest of:

(1)    California MAC minus 10 cents;

(2)    FUL minus 10 cents;

(3)    EAC (defined as the lower of AWP minus 5% or the manufacturer's direct purchase price) minus 10 cents; or

(4)    Charge to the general public minus 10 cents.

**(4).    Colorado Medicaid**

46.    Reimbursement for a prescription drug is made at the provider's usual and customary charge.

**(5).    Delaware Medicaid**

47.    Reimbursement for covered drugs is the lowest of:

(1)    AWP minus 14%;

(2)    The usual and customary charge, as billed by the provider;

(3)    FUL;

(4)    Delaware MAC; or

(5)    EAC.

**(6).    Florida Medicaid**

48.    Medicaid reimbursement for prescribed drugs is the lowest of:

(1)    EAC (defined as the lesser of AWP minus 13.25% or WAC plus 7%);

(2)    FUL;

(3)    Florida MAC; or

(4)    The amounted billed by the pharmacy, which cannot exceed the pharmacy's

13
Complaint

usual and customary charge for the prescription.

### (7).    Hawaii Medicaid

49.   Single-source drugs are reimbursed at the lowest of:

    (1)   Billed charge;

    (2)   Provider's usual and customary charge to the general public; or

    (3)   EAC.

50.   Multiple-source drugs are reimbursed at the lowest of:

    (1)   Billed charge;

    (2)   Provider's usual and customary charge to the general public;

    (3)   EAC (defined as AWP minus 10.5%);

    (4)   FUL; or

    (5)   State MAC.

### (8).    Idaho Medicaid

51.   Reimbursement is made at the lesser of the following:

    (1)   FUL;

    (2)   State MAC;

    (3)   EAC; or

    (4)   The usual and customary charge.

### (9).    Illinois Medicaid

52.   Reimbursement for multiple-source drugs is made at the lesser of the following:

    (1)   FUL;

    (2)   State MAC;

    (3)   AWP-25%; or

    (4)   The usual and customary charge.

53.   Reimbursement for single-source drugs is made at the lesser of:

    (1)   AWP-12%; or

    (2)   The usual and customary charge.

{00005890; 1}

**(10).   Iowa Medicaid**

54.   Reimbursement for generic drugs is made at the lesser of the following:

    (1)    FUL;

    (2)    State MAC; or

    (3)    The usual and customary charge.

**(11).   Kansas Medicaid**

55.   Reimbursement for prescription drugs is made at the lesser of the following:

    (1)    State MAC; or

    (2)    The usual and customary charge.

**(12).   Kentucky Medicaid**

56.   Reimbursement for prescription drugs is made at the lesser of the following:

    (1)    FUL;

    (2)    State MAC;

    (3)    AWP-14% for generics;

    (4)    The usual and customary charge; or

    (5)    Gross amount due.

**(13).   Louisiana Medicaid**

57.   Reimbursement for covered drugs is the lowest of:

    (1)    AWP-13.5% for independent pharmacies/AWP-15% for chain pharmacies; or

    (2)    The usual and customary price.

**(14).   Maine Medicaid**

58.   Reimbursement is made at the lesser of the following:

    (1)    FUL or State MAC;

    (2)    EAC; or

    (3)    The usual and customary charge.

{00005890; 1}

**(15).   Maryland Medicaid**

59.   Reimbursement for multiple-source drugs is made at the lesser of the following:

    (1)   FUL;

    (2)   State MAC;

    (3)   EAC; or

    (4)   The usual and customary charge.

**(16).   Massachusetts Medicaid**

60.   Payment rate for multiple-source drugs is the lowest of:

    (1)   FUL;

    (2)   State MAC; or

    (3)   The usual and customary charge.

61.   Payment for drugs for which a FUL or MAC has not been established, single-source drugs and non-legend drugs is the lowest of:

    (1)   EAC; or

    (2)   The usual and customary charge.

**(17).   Minnesota Medicaid**

62.   Reimbursement for prescription drugs is made at the lesser of the following:

    (1)   MAC;

    (2)   Discounted AWP; or

    (3)   The usual and customary charge.

**(18).   Mississippi Medicaid**

63.   Reimbursement for prescription drugs is made at the lesser of the following:

    (1)   FUL;

    (2)   WAC+9%;

    (3)   AWP–12%; or

    (4)   Usual and customary charge.

**(19).   Missouri Medicaid**

64.   Reimbursement for prescription drugs is made at the lesser of the following:

{00005890; 1}

(1)     FUL;

(2)     WAC+10%;

(3)     State MAC;

(4)     AWP–10.43%; or

(5)     The usual and customary charge.

**(20).   Montana Medicaid**

65.     Pharmaceuticals are reimbursed at the lesser of the following:

(1)     EAC plus a dispensing fee;

(2)     State MAC; or

(3)     The usual and customary charge.

**(21).   Nebraska Medicaid**

66.     Reimbursement for prescription drugs is made at the lesser of the following:

(1)     FUL;

(2)     EAC;

(3)     State MAC; or

(4)     The usual and customary charge.

**(22).   Nevada Medicaid**

67.     Legend drugs are reimbursed at the lowest of:

(1)     FUL;

(2)     EAC (defined by Nevada Medicaid as AWP less 15%); or

(3)     The pharmacy's usual charge to the general public.

**(23).   New Hampshire Medicaid**

68.     Pharmaceuticals are reimbursed at the lesser of the following:

(1)     EAC (defined in New Hampshire as AWP minus 12%);

(2)     Usual and customary charge to the general public;

(3)     State MAC; or

(4)     FUL.

{00005890; 1}

**(24).   New Jersey Medicaid**

69.     In most instances, pharmaceuticals are reimbursed at the provider's usual and customary charge or advertised charge.

**(25).   New Mexico Medicaid**

70.     Reimbursement is made at the lesser of the following:

  (1) Provider's usual and customary charge;

  (2) State MAC;

  (3) FUL; or

  (4) EAC (defined in New Mexico as AWP less 12.5%).

**(26).   Ohio Medicaid**

71.     For most drugs, reimbursement is made at the lesser of the following:

  (1) Provider's billed charge, <u>i.e.</u>, the usual and customary charge; or

  (2) State MAC.

**(27).   Oklahoma Medicaid**

72.     Reimbursement for prescription drugs is made at the lesser of the following:

  (1) The usual and customary charge to  the general public; or

  (2) The lower of EAC, FUL or Oklahoma MAC.

**(28).   Oregon Medicaid**

73.     Reimbursement for generic drugs is made at the lesser of the following:

  (1) Provider's usual and customary charge; or

  (2) AWP-12%.

**(29).   Pennsylvania Medicaid**

74.     Reimbursement for legend and non-legend drugs is made at the lowest of:

  (1) EAC;

  (2) The usual and customary charge to the general public; or

  (3) Pennsylvania MAC.

**(30).   Rhode Island Medicaid**

75.     Reimbursement is made at the lesser of the following:

18<br>Complaint

{00005890; 1}

(1)     Provider's usual and customary charge; or

(2)     State MAC.

### (31).   South Carolina Medicaid

76.     Pharmaceuticals are reimbursed at the lesser of the following:

(1)     AWP – 10%;

(2)     Usual and customary charge to the general public;

(3)     State MAC; or

(4)     FUL.

### (32).   South Dakota Medicaid

77.     Pharmaceuticals are reimbursed at the lesser of the following:

(1)     EAC;

(2)     The usual and customary charge; or

(3)     State MAC.

### (33).   Tennessee Medicaid

78.     Reimbursement is made at the lesser of the following:

(1)     The provider's usual and customary charge to the general public;

(2)     AWP minus 13%; or

(3)     State MAC.

For multi-source generic drugs, the TennCare pharmacy program uses a MAC pricing system.

### (34).   Texas Medicaid

79.     For legend drugs, reimbursement is made at the lesser of the following:

(1)     The usual and customary price charged the general public; or

(2)     EAC (defined in Texas as the lesser of AWP-15% or WAC+12%).

### (35).   Virginia Medicaid

80.     Reimbursement for multiple-source drugs is made at the lesser of the following:

(1)     FUL;

(2)     State MAC;

(3)     AWP-10%; or

19
Complaint

{00005890; 1}

        (4)     The usual and customary price.

81.    Reimbursement for single source drugs is made at the lesser of the following:

        (1)     AWP-10%; or

        (2)     The usual and customary price.

### (36).   Washington Medicaid

82.    Pharmaceuticals are reimbursed at the lesser of the following:

        (1)     EAC;

        (2)     Actual Acquisition Cost for §340(b) drugs;

        (3)     The usual and customary charge to the non-Medicaid population;

        (4)     State MAC; or

        (5)     FUL.

### (37).   West Virginia Medicaid

83.    Pharmaceuticals are reimbursed at the lesser of the following:

        (1)     AWP-30%;

        (2)     The usual and customary charge to the general public;

        (3)     State MAC; or

        (4)     FUL.

### (38).   Wisconsin Medicaid

84.    Reimbursement for legend drugs is made under one of the following formulas:

(a) at the lesser of:

        (1)     AWP-10%; or

        (2)     Usual and customary price;

or (b) at the lesser of:

        (1)     MAC; or

        (2)     Usual and customary price.

### (39).   Wyoming Medicaid

85.    Reimbursement for multiple source drugs is the lower of:

        (1)     Cost of the drug; or

{00005890; 1}

(2)     The usual and customary charge.

**2.     Other State Pharmacy Benefit Programs**

86.     Many states offer additional prescription drug assistance to eligible groups, with similar "usual and customary" price limitations on drug reimbursements.  These programs include, but are not limited to:

a.   Florida Silver SaveRx Program;

b.   Michigan Elder Prescription Insurance Coverage Program;

c.   Montana Prescription Drug Expansion and Drug Plus Programs;

d.   Rhode Island Pharmacy Prescription Drug Discount Program for the Uninsured; and

e.   New Jersey Kid Care Program.

**3.     Public Health Service Programs**

87.     The United States Public Health Service provides funds for a number of entities that offer health services to the poor and underprivileged (including, for example, public housing health centers, disproportionate share hospitals, black lung clinics, urban Indian organizations, and AIDS clinics).  Federal regulations require that the maximum amount that Public Health Service entities can expend from program funds for the acquisition of drugs shall be the lowest of:

(1)     The maximum allowable cost of a multi-source drug as established by the Secretary of HHS;

(2)     EAC; or

(3)     The provider's usual and customary charge to the public for the drug.

42 C.F.R. § 50.504.

88.     Billing practices that inflate pharmacy bills above the pharmacies' usual and customary charge defraud Public Health Service entities when the usual and customary charge is lower than the alternative charges in the statutory reimbursement formula.

**4.     Federal and State Workers' Compensation Programs**

89.     The Office of Workers' Compensation Programs ("OWCP") of the U.S. Department of Labor ("DOL") administers federal workers' compensation programs under four statutes:  (1) the Federal Employees' Compensation  ("FECA"), 5 U.S.C. §§ 8101 et seq.; (2) the

21
Complaint

Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901 et seq.; (3) the Federal Black Lung Benefits Act ("FBLBA"), 30 U.S.C. §§ 901 et seq.; and (4) the Energy Employees Occupational Illness Compensation Program Act ("EEOIC") (also known as the "Beryllium Exposure Compensation Act"), 42 U.S.C.A. §§ 7384 et seq.

90. The largest of these workers' compensation programs is the FECA program, which provides coverage for approximately three million federal and postal workers for employment-related injuries and occupational diseases. Under the provisions of FECA, OWCP authorizes payment for medical services, including prescription drugs, and establishes limits on the maximum payment for such services.

91. Under FECA regulations, OWCP reimburses prescription drugs at the lesser of (i) the provider's lowest fee to the general public, or (ii) the maximum allowable amount established by OWCP's Fee Schedule (which is AWP minus 5 percent). See 20 C.F.R. § 10.813. The FECA regulations expressly prohibit a provider from billing OWCP at the Fee Schedule's maximum amount if the provider charges the public a lower fee: "Where a provider's fee for a particular service or procedure is lower to the general public than as provided by the schedule of maximum allowable charges, the provider shall bill at the lower rate." 20 C.F.R. § 10.813(a).

92. A provider that charges OWCP a fee for prescription drugs that is higher than the provider's fee to the general public may be excluded from the OWCP program, in addition to the imposition of any other penalty permitted by law. See 20 C.F.R. § 10.813(a), 10.815(d).

93. The above requirements are reiterated in the OWCP Fee Schedule itself that is disseminated to all providers. The Introduction to the 2004 Fee Schedule, at 8, states:

> By regulation [20 C.F.R. 10.813], a provider is to charge OWCP their lowest fee charged to the general public. The OWCP fee schedule is not to be used to establish billing rates.

94. OWCP reimburses prescription drugs under other federal workers' compensation programs in a manner similar to reimbursement under FECA. See, e.g., 20 C.F.R. §30.713 (EEOIC regulations provide that prescription drugs under that program are reimbursed based on the lesser of the provider's fee to the general public or the maximum allowed by the Fee Schedule).

{00005890; 1}

95.     Like the federal government, all states provide workers' compensation coverage for their public employees.  Although the formula for reimbursing prescription drugs varies from state to state, most state workers' compensation programs, like the federal government's, prohibit reimbursement of pharmacy drugs in excess of the pharmacy's fee to the general public for the drugs (often expressed as the pharmacies' "usual and customary price").

96.     Every workers' compensation program that caps pharmacy drug reimbursement in the manner described above is vulnerable to the fraudulent billing practices alleged in this Complaint, since Kmart's practices fraudulently inflate its usual and customary prices.

### 5.     Other Health Care Programs

97.     The health care programs described above are intended to be illustrative and not exhaustive of the various government programs that cap the reimbursement of pharmacy drugs at the pharmacy's usual and customary price for the drugs.  All of these programs, as well as private insurance companies that reimburse prescription drugs in a similar manner, are defrauded by the fraudulent billing practices alleged in this Complaint.

## VI.     DEFENDANT'S FRAUDULENT PRACTICES

### A.     Kmart's Retail Maintenance Program Establishes A "Usual And Customary" Price For Generic Drugs

98.     Kmart pharmacies fill approximately 40 million drug prescriptions a year.  Kmart has a largely elderly or financially stressed patron demographic, and a large portion of their prescriptions are reimbursed (at least in part) by state and/or federal public assistance programs.

99.     Since at least 2005, Kmart has offered a generic drug pricing program that allows customers to purchase a 90-day prescription of listed generics for only $15, and 60 and 30 day prescriptions for $10 and $5, respectively.  The drugs that are covered by the RMP program include some of the most widely prescribed generics, including Atenolol, Lisinopril/HCTZ, Verapamil, Furosemide, Fluoxetine, Trazedone, Sertraline, Ibuprofen, Tramadol, and Metformin, among many others.

100.    There are no eligibility requirements to take advantage of the RMP price.  However, it is a cash-only price.  Not surprisingly, the RMP program is attractive to Kmart customers.  In 2007, more than 1,200,000 prescriptions were filled at RMP prices.  Approximately

23
Complaint

{00005890; 1}

10 million prescriptions were submitted to private insurers in that year.

101.   Relator is informed and believes that Kmart administers the RMP program internally as if it is a third-party insurer.  Kmart utilizes software and related services of Agelity to manage its generic pricing program.  RMP "bills" are created and sent to this administrative entity, but are only used for tracking RMP prescriptions within the Kmart corporate structure.  RMP customers are strictly cash-paying, and are not reimbursed by or have reimbursement claims submitted to insurers.

102.   Insured customers who choose to utilize their prescription drug plans instead of the cash-only RMP program, pay their pre-determined co-payments (which are typically less than the $5, $10 and $15 cash amounts), and have the balance of their prescription's price submitted for reimbursement to their insurers by Kmart.  Medicaid beneficiaries, of course, have no co-payment for prescription drug purchases.

103.   Kmart charges vastly different prices for generic prescriptions depending on whether the payer is an insurer or a cash-paying RMP customer.  While RMP customers pay $15, $10, and $5 for 90-, 60- and 30-day supplies (respectively) of any generic, Kmart bills insurers – including federal and state government prescription drug programs – many multiples more.  Kmart, thus, ignores the true "usual and customary" prices, and instead knowingly and improperly bills vastly inflated prices to public and private insurers that impose "usual and customary" pricing limits.

104.   Relator discovered this scheme through his own experience as a Medicare Part D beneficiary.  For example, on September 22, 2007 Relator (a Medicare Part D beneficiary) had Kmart fill a prescription for generic Lisinopril/HCTZ 20-25.  Lisinopril/HCTZ is among the drugs covered by Kmart's RMP Program, and Relator expected that, after his $10 co-payment, Kmart would claim a $15 charge (the same amount paid by the cash-paying public) to his Part D plan (Paramount Elite), and seek reimbursement from Paramount for the remaining $5.

105.   Relator discovered, however, that his Part D plan received a claim for $60.84 charge for the Lisinopril/HCTZ, and billed the Part D plan $50.84 ($60.84 - $10.00 co-payment).  Kmart was reimbursed $35.84, about 240 percent more than the true "usual and customary" price.

{00005890; 1}

106.    Kmart, thus, maintains a dual "usual and customary" pricing structure for generic drugs.  One price for cash-paying RMP customers, and another, much higher "usual and customary" price is maintained for insured customers.  RMP prices, however, represent Kmart's true "usual and customary" price for the hundreds of generic drugs that are included in that program, since $15 for 90-day generic prescriptions is the price most cash-paying Kmart pharmacy customers receive.

107.    In contrast, other "big box" pharmacy chains properly bill insurers for drugs that are on their generic drug pricing formulary.  For example, WalMart offers a generics program very similar to Kmart's.  A 30-day supply of listed generics at WalMart is $4, and a 90-day supply is $12.

108.    As he did at Kmart, Relator filled a Lisinopril/HCTZ 20-25 prescription at WalMart that was charged to his Paramount Elite Part D plan.  In this instance, however, WalMart properly billed its "usual and customary" charge for the prescription – i.e., $12.  Of that amount, Relator paid a $10 co-payment and the Medicare Part D plan paid the remaining $2.

109.    Kmart maintains its pharmacy computer system so that it automatically generates and creates claims for reimbursement with inflated usual and customary prices.  Internal electronic pricing information accessed by its store pharmacists does not accurately reflect the correct "usual and customary" prices for RMP generics.  Instead of $15, $10 and $5, the Kmart computer system typically shows an RMP-generic price that is many multiples more.  For example, the Kmart computer system reflects a cash price of $80.29 for a 90-day prescription of Lisinipril/HCTZ 20-25, an RMP generic.

110.    Even though the RMP program is a popular, well-advertised nationwide pricing program for the cash-paying public, company pharmacists must "override" the system's inflated cash prices to use RMP pricing.  Kmart pharmacists are instructed on how to carry out an RMP price override on the pharmacy computer system:  they must enter the RMP "insurance" plan code; check Rx; enter the correct RMP price ($5, $10, $15); select "Price Override;" enter "Still Bill;" select "Fill Rx;" and, transmit.

{00005890; 1}

111.    Because a price override is required when charging cash-paying customers and not insured customers, insurance claims (which do not involve an override operation) are automatically made based on Kmart's inflated usual and customary pricing, rather than the true RMP cash price.

112.    Kmart's failure to input and maintain accurate "usual and customary" prices for RMP generics in the company's pharmacy computer system, thus, systematically causes inaccurate claims for reimbursement to be submitted to federal and state prescription drug programs.  As alleged above, the usual and customary prices for generics that Kmart bills federal and state programs are often many multiples of the true "usual and customary" prices enjoyed by cash-paying customers.

113.    In contrast to its inaccurate price information, Kmart's pharmacy computer system maintains the correct public and private insurers' billing methodologies, including whether "usual and customary" price is a limitation on reimbursement.  Because Kmart knowingly omits the true "usual and customary" price (i.e., RMP price) from its computerized billing and pricing system, its true, lower "usual and customary" prices are rarely if ever conveyed to governmental or private prescription drug plans.

114.    Upon further investigation, Relator learned that Kmart consistently billed public and private insurers amounts far in excess of true "usual and customary" prices for the dozens of generic drugs in its RMP Program.  For example, between January and April, 2008, Kmart maintained the following inflated price differentials between its true (RMP) usual and customary prices, and the inflated "usual and customary" prices.

115.    Examples of inflated usual and customary prices for 30-day prescriptions for $5 RMP generics:

80 mg simvastatin - $152.97

40 mg pravastatin - $148.97

500 mg metformin – $52.97

50 mg tramadol - $77.09

100 mg sertraline - $27.99

{00005890; 1}

50 mg sertraline - $92.97

40 mg citalopram - $39.99

116.   Examples of inflated usual and customary prices for 60-day prescriptions for $10 RMP generics:

600 mg oxaprozin - $60.59

500 mg naproxen - $58.79

50 mg tramadol - $115.59

100 mg sertraline - $100.79

10 mg fluoxetine - $40.99

117.   Examples of inflated usual and customary prices for 90-day prescriptions for $15 RMP generics:

25 mg spironolactone - $23.97

5 mg amlodipine - $139.49

400 mg acyclovir - $80.99

100 mcg levothyroxin - $31.39

118.   With respect to the Ohio Medicaid program, the following are additional examples of Kmart's opportunistic pricing and claims for reimbursement:

a. On October 28, 2007, Kmart sought $71.09 in reimbursement for a 30-day prescription of 4 mg tizanidine, and was reimbursed $24.58 by Medicaid;

b. On October 9, 2007, Kmart sought $45.99 in reimbursement for a 30-day prescription of 75 mg diclofenac and was reimbursed $32.26 by Medicaid;

c. On October 5, 2007, Kmart sought $118.49 in reimbursement for a 30-day prescription of 4 mg tizanidine, and was reimbursed $38.50 by Medicaid.

119.   The following are examples of inflated claims for reimbursement made by Kmart on the Ohio Medicaid HMO program managed by US Scripts.  US Scripts manages the majority of state Medicaid programs.

27
Complaint

a. On October 24, 2007, Kmart sought $86.37 in reimbursement for a 30-day prescription of sertraline, and was reimbursed $61.99;

b. On October 22, 2007, Kmart sought $80.38 in reimbursement for a 30-day prescription of tramadol and was reimbursed $10.10;

c. On October 31, 2007, Kmart sought $243.77 in reimbursement for a 30-day prescription of fluoxetine and was reimbursed $11.00.

120.   The following are examples of inflated claims for reimbursement made by Kmart on Caremark's Medicare Part D plan:

a. On November 2 and October 3, 2007, Kmart sought $45.08 in reimbursement for a 30-day prescription of 5 mg warfarin, and was reimbursed $16.23.  The pharmacy received $2.15 co-payments for total compensation of $18.38.

b. On November 6, 2007, Kmart sought $63.88 in reimbursement for a 30-day prescription of 1 mg warfarin.  The pharmacy received a $10 co-pay and was reimbursed $18.53 by Caremark, for a total reimbursement of $28.53.

c. On October 8, 2007, Kmart sought $89.46 in reimbursement for a 30-day prescription of 500 mg metformin.  It received a $1 co-payment and was reimbursed $13.45 by Caremark, for total reimbursement of $14.45.

121.   The following are examples of inflated claims for reimbursement made by Kmart on Humana's Medicare Part D plan:

a. On November 8, 2007, Kmart sought $92.00 in reimbursement for a 30-day prescription of 1000 mg metformin and was reimbursed $13.64.

b. On November 5, 2007, Kmart sought $57.94 in reimbursement for a 30-day prescription of 40 mg Lisinopril/HCTZ.  It received a $3.51 co-pay and was reimbursed $10.53 by Humana for total $14.04 reimbursement.

c. On October 26, 2007, Kmart sought $258.81 in reimbursement for a 30-day prescription of 10 mg simvastatin.  It received a $14.13 co-pay and

28
Complaint

{00005890; 1}

was reimbursed $42.37 by Humana for a total of $56.50 reimbursement.

122.    On October 26, 2007, Kmart sought $258.81 in reimbursement for a 30-day prescription of 10 mg simvastatin. It received a $14.13 co-pay and was reimbursed $42.37 by Humana for a total of $56.50 reimbursement. On October 26, 2007, Kmart sought $258.81 in reimbursement for a 30-day prescription of 10 mg simvastatin. It received a $14.13 co-pay and was reimbursed $42.37 by Humana for a total of $56.50 reimbursement. The following are examples of inflated claims for reimbursement made by Kmart on Ohio Workers' Compensation Program ("OWCP"):

> a.    On October 10, 2007, Kmart sought $121.49 in reimbursement for a 30-day prescription of 400 mg acyclovir. It was reimbursed $53.00 by OWCP.
>
> b.    On October 1, 2007, Kmart sought $77.99 in reimbursement for a 30-day prescription of 50 mg Tramadol. It was reimbursed $33.50 by OWCP.
>
> c.    On October 1, 2007, Kmart sought $71.99 in reimbursement for a 30-day prescription of 20 mg Citalopram. It was reimbursed $24.50 by OWCP.

123.    Similarly, price quotes as of November 17, 2007 for simvastatin reimbursed under the Paramount Elite Part D plan show that 30, 60 and 90-day prescriptions for 20 mg simvastatin were priced at $151.97, $299.97 and $449.97, respectively. Under the RMP program, a cash-paying patron was charged $5, $10 and $15 for identical prescriptions. Interestingly, Kmart's cost (as of November 12, 2007) for a 90-day simvastatin prescription was only $4.78, approximately 1/100[th] of its charge.

124.    All of the generic drugs identified in Paragraphs 115 –122 are included in Kmart's RMP formulary and are charged at $5, $10 and $15 for 30, 60 and 90 days to the cash-paying public. Had Kmart properly charged the public programs its true "usual and customary" prices for generic drugs, those governmental entities would have paid lower reimbursements, and Part D beneficiaries would not have reached the "doughnut hole" as quickly.

{00005890; 1}

125.     In addition, at least since 2005, Kmart has instructed its pharmacists to lower its prescription drug prices to meet competitors' generic pricing programs – particularly, WalMart's $4 price for the 30-day generic prescriptions – for those generics that are on the competitor's generic program formularies.  Thus, in instances where a cash-paying customer fills a prescription for a generic drug on WalMart's $4 formulary, Kmart charges $4, $8 and $12 for 30, 60 and 90 day prescriptions.  Indeed, as of April, 2008, 90 day prescriptions were only $10.  For generics on WalMart's formulary, therefore, Kmart's "usual and customary" prices are even lower than RMP prices – i.e., $4, $8 and $12 (and, $10 as of April 2008).

126.     As a direct result of Kmart's fraudulent overpricing scheme - and by virtue of the defendant's knowing submission of inflated claims for reimbursement to federal and state prescription drug programs for payment or approval - the U.S. and States' Treasuries have been defrauded of many tens of millions of dollars.

VII.         **IMPACT ON PRIVATE INSURERS**

127.     The states of California and Illinois have enacted Insurance Fraud Prevention Acts that permit Relator to bring a qui tam action to recover for fraudulent claims submitted to *private* insurance companies in those states.  See Counts III and IX below.

128.     Although this Complaint has focused on the impact of defendant's practices on the federal and state governments, these same practices also defraud private insurance companies in the same manner that the practices defraud the federal and state governments.

129.     The practices alleged herein are systematic, nationwide practices that defraud private insurance companies that reimburse prescription drugs in every state where defendant conducts business, including California and Illinois.

**Count I**
**False Claims Act**
**31 U.S.C. §§3729(a)(1) and (a)(2)**

130.     Relator repeats and realleges each and every allegation contained in paragraphs 1 through 129 above as though fully set forth herein.

131.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §3729, et seq., as amended.

30
Complaint

{00005890; 1}

132.     By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to officers, employees or agents of the United States Government for payment or approval under Medicaid, Medicare and various other government health care programs, within the meaning of 31 U.S.C. §3729(a)(1).

133.     By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false or fraudulent records and statements, and omitted material facts, to get false and fraudulent claims paid or approved under Medicaid, Medicare and various other government health care programs, within the meaning of 31 U.S.C. §3729(a)(2).

134.     The United States, unaware of the falsity of the records, statements and claims made or caused to be made by the defendant, paid and continues to pay the claims that would not be paid but for defendant's unlawful conduct.

135.     By reason of the defendant's acts, the United States has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

136.     Additionally, the United States is entitled to the maximum penalty of $11,000 for each and every false and fraudulent claim made and caused to be made by defendant arising from their unlawful conduct as described herein.

**Count II**
**California False Claims Act**
**Cal Govt Code §12651(a)(1)-(2)**

137.     Relator repeats and realleges each and every allegation contained in paragraphs 1 through 129 above as though fully set forth herein.

138.     This is a claim for treble damages and penalties under the California False Claims Act.

139.     By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the California State Government for payment or approval.

140.     By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the California State Government to approve and pay such false and fraudulent claims.

{00005890; 1}

141.   The California State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that would not be paid but for defendant's unlawful conduct.

142.   By reason of the defendant's acts, the State of California has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

143.   Additionally, the California State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**Count III**
**California Insurance Frauds Prevention Act**
**California Insurance Code § 1871.7**

144.   Relator repeats and realleges each and every allegation contained in paragraphs 1 through 129 above as though fully set forth herein.

145.   This is a claim for treble damages and penalties under the California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871.7, as amended (referred to in this Count as "the Act"). The Act provides for civil recoveries against persons who violate the provisions of the Act or the provisions of California Penal Code sections 549 or 550, including recovery of up to three times the amount of any fraudulent insurance claims, and fines of between $5,000 and $10,000 for each such claim. Cal. Ins. Code §1871.7(b).

146.   Subsection (e) of Cal. Ins. Code §1871.7 provides for a *qui tam* civil action in order to create incentives for private individuals who are aware of fraud against insurers to help disclose and prosecute the fraud. Cal. Ins. Code §1871.1(e). The *qui tam* provision was patterned after the Federal False Claims Act, 31 U.S.C. §§3729-32, and the California False Claims Act, Cal. Gov't Code §§12650 et seq.

147.   Subsection (b) of Cal. Ins. Code §1871.7 provides for civil recoveries against persons who violate the provisions of Penal Code sections 549 or 550. Section 550 of the Penal Code prohibits the following activities, among others:

(a)   It is unlawful to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following:

32
Complaint

{00005890; 1}

\* \* \* \* \* \*

(5) Knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim.
(6) Knowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit.

\* \* \* \* \* \*

(b)     It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following:

(1) Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.
(2) Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.
(3) Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled.

Cal. Penal Code § 550.

148.     By virtue of the acts described in this Complaint, defendant knowingly presented or caused to be presented, false or fraudulent claims for health care benefits, in violation of Penal Code §550(a).

149.     By virtue of the acts described in this Complaint, defendant also concealed and/or failed to disclose information that would have affected the rights of pharmacies to receive reimbursement for prescriptions, in violation of Penal Code §550(b).

150.     Each claim for reimbursement that was inflated as a result of defendant's illegal practices represents a false or fraudulent record or statement, and a false or fraudulent claim for payment.

151.     Private insurers, unaware of the falsity of the records, statements and claims made or caused to be made by defendant, paid and continue to pay the claims that would not be paid but for defendant's unlawful conduct.

152.     The California State Government is entitled to receive three times the amount of each claim for compensation submitted in violation of Cal. Ins. Code §1871.7.  Additionally, the

33
Complaint

1  California State Government is entitled to the maximum penalty of $10,000 for each and every

2  violation alleged herein.

3
**Count IV**
**Delaware False Claims And Reporting Act**
**6 Del C. §1201(a)(1)-(3)**

4

5
153.   Relator repeats and realleges each and every allegation contained in paragraphs 1

6  through 129 above as though fully set forth herein.

7
154.   This is a claim for treble damages and penalties under the Delaware False Claims

8  And Reporting Act.

9
155.   By virtue of the acts described above, defendant knowingly presented or caused to

10  be presented, false or fraudulent claims to the Delaware State Government for payment or

11  approval.

12
156.   By virtue of the acts described above, defendant knowingly made, used, or caused

13  to be made or used false records and statements, and omitted material facts, to induce the

14  Delaware State Government to approve and pay such false and fraudulent claims.

15
157.   The Delaware State Government, unaware of the falsity of the records, statements

16  and claims made, used, presented or caused to be made, used or presented by defendant, paid and

17  continues to pay the claims that would not be paid but for defendant's unlawful conduct.

18
158.   By reason of the defendant's acts, the State of Delaware has been damaged, and

19  continues to be damaged, in substantial amount to be determined at trial.

20
159.   Additionally, the Delaware State Government is entitled to the maximum penalty

21  of $11,000 for each and every violation alleged herein.

22
**Count V**
**Florida False Claims Act**
**Fla. Stat. Ann. §68.082(2)**

23

24
160.   Relator repeats and realleges each and every allegation contained in paragraphs 1

25  through 129 above as though fully set forth herein.

26
161.   This is a claim for treble damages and penalties under the Florida False Claims Act.

27
162.   By virtue of the acts described above, defendant knowingly presented or caused to

28

34<br>Complaint

{00005890; 1}

1   be presented, false or fraudulent claims to the Florida State Government for payment or approval.

2        163.   By virtue of the acts described above, defendant knowingly made, used, or caused

3   to be made or used false records and statements, and omitted material facts, to induce the Florida

4   State Government to approve and pay such false and fraudulent claims.

5        164.   The Florida State Government, unaware of the falsity of the records, statements and

6   claims made, used, presented or caused to be made, used or presented by defendant, paid and

7   continues to pay the claims that would not be paid but for defendant's unlawful conduct.

8        165.   By reason of the defendant's acts, the State of Florida has been damaged, and

9   continues to be damaged, in substantial amount to be determined at trial.

10        166.   Additionally, the Florida State Government is entitled to the maximum penalty of

11   $10,000 for each and every violation alleged herein.

### Count VI
### Georgia False Claims Act
### Ga. Code Ann. §49-4-168

12

13

14        167.   Relator repeats and realleges each and every allegation contained in paragraphs 1

15   through 129 above as though fully set forth herein.

16        168.   This is a claim for treble damages and penalties under the Georgia False Claims

17   Act.

18        169.   By virtue of the acts described above, defendant knowingly presented or caused to

19   be presented, false or fraudulent claims to the Georgia State Government for payment or approval.

20        170.   By virtue of the acts described above, defendant knowingly made, used, or caused

21   to be made or used false records and statements, and omitted material facts, to induce the Georgia

22   State Government to approve and pay such false and fraudulent claims.

23        171.   The Georgia State Government, unaware of the falsity of the records, statements

24   and claims made, used, presented or caused to be made, used or presented by defendant, paid and

25   continues to pay the claims that would not be paid but for defendant's unlawful conduct.

26        172.   By reason of the defendant's acts, the State of Georgia has been damaged, and

27   continues to be damaged, in substantial amount to be determined at trial.

28        173.   Additionally, the Georgia State Government is entitled to the maximum penalty of

{00005890; 1}

1   $11,000 for each and every violation alleged herein.

2
## Count VII
## Hawaii False Claims Act
## Haw. Rev. Stat. §661-21(a)

3

4

5   174.   Relator repeats and realleges each and every allegation contained in paragraphs 1

6   through 129 above as though fully set forth herein.

7   175.   This is a claim for treble damages and penalties under the Hawaii False Claims Act.

8   176.   By virtue of the acts described above, defendant knowingly presented or caused to

9   be presented, false or fraudulent claims to the Hawaii State Government for payment or approval.

10   177.   By virtue of the acts described above, defendant knowingly made, used, or caused

11   to be made or used false records and statements, and omitted material facts, to induce the Hawaii

12   State Government to approve and pay such false and fraudulent claims.

13   178.   The Hawaii State Government, unaware of the falsity of the records, statements and

14   claims made, used, presented or caused to be made, used or presented by defendant, paid and

continues to pay the claims that would not be paid but for defendant's unlawful conduct.

15   179.   By reason of the defendant's acts, the State of Hawaii has been damaged, and

16   continues to be damaged, in substantial amount to be determined at trial.

17   180.   Additionally, the Hawaii State Government is entitled to the maximum penalty of

18   $10,000 for each and every violation alleged herein.

19
## Count VIII
## Illinois Whistleblower Reward And Protection Act
## 740 Ill. Comp. Stat. §175/3(a)(1)-(3)

20

21

22   181.   Relator repeats and realleges each and every allegation contained in paragraphs 1

23   through 129 above as though fully set forth herein.

24   182.   This is a claim for treble damages and penalties under the Illinois Whistleblower

25   Reward And Protection Act.

26   183.   By virtue of the acts described above, defendant knowingly presented or caused to

27   be presented, false or fraudulent claims to the Illinois State Government for payment or approval.

28   184.   By virtue of the acts described above, defendant knowingly made, used, or caused

{00005890; 1}

1   to be made or used false records and statements, and omitted material facts, to induce the Illinois

2   State Government to approve and pay such false and fraudulent claims.

3       185.    The Illinois State Government, unaware of the falsity of the records, statements and

4   claims made, used, presented or caused to be made, used or presented by defendant, paid and

5   continues to pay the claims that would not be paid but for defendant's unlawful conduct.

6       186.    By reason of the defendant's acts, the State of Illinois has been damaged, and

7   continues to be damaged, in substantial amount to be determined at trial.

8       187.    Additionally, the Illinois State Government is entitled to the maximum penalty of

9   $10,000 for each and every violation alleged herein.

10                          **Count IX**
                **Illinois Insurance Claims Frauds Prevention Act**
11                          **740 Ill. Comp. Stat. §92**

12      188.    Relator repeats and realleges each and every allegation contained in paragraphs 1

13  through 129 above as though fully set forth herein.

14      189.    This is a claim for treble damages and penalties under the Illinois Insurance Claims

15  Fraud Prevention Act, 740 Ill. Comp. Stat. §92.

16      190.    Subsection 5(b) of the  Illinois Insurance Claims Fraud Prevention Act provides:

17
18          A person who violates any provision of this Act or Article 46 of the
        Criminal Code of 1961 shall be subject, in addition to any other penalties that may
19      be prescribed by law, to a civil penalty of not less than $5,000 nor more than
        $10,000, plus an assessment of not more than 3 times the amount of each claim for
20      compensation under a contract of insurance.

21      191.    Article 46 of the Illinois Criminal Code, referenced in the above-quoted section,

22  provides criminal penalties for any person who commits the offense of insurance fraud, defined in

23  the statute as follows:

24          (a)     A person commits the offense of insurance fraud when he or she
25      knowingly obtains, attempts to obtain, or causes to be obtained, by deception,
        control over the property of an insurance company or self-insured entity by the
26      making of a false claim or by causing a false claim to be made on any policy of
        insurance issued by an insurance company . . . .
27
28  720 Ill. Comp. Stat. §5/46-1(a).

                                37
                            Complaint

{00005890; 1}

192.    Subsection 15(a) of the Illinois Insurance Claims Fraud Prevention Act provides for a qui tam civil action in order to create incentives for private individuals to prosecute violations of the statute.  Subsection 15(a) provides:  "An interested person, including an insurer, may bring a civil action for a violation of this Act for the person and for the State of Illinois. The action shall be brought in the name of the State." 740 Ill. Comp. Stat. §92/15(a).

193.    By virtue of the conduct described in this Complaint, defendant committed the following acts, or aided and abetted the commission of the following acts, in violation of the Illinois Insurance Claims Fraud Prevention Act:  knowingly obtained, attempted to obtain, and caused to be obtained, by deception, control over the property of an insurance company or self-insured entity by the making of a false claim and by causing a false claim to be made on a policy of insurance issued by an insurance company, in violation of 740 Ill. Comp. Stat. §92/5(b) and 720 Ill. Comp. Stat. §5/46-1(a).

194.    As a result of such conduct, defendant has received illegal profits to which it was not entitled, at the expense of insurers and at the expense of the People of the State of Illinois, in substantial amount to be determined at trial.

195.    The Illinois State Government is entitled to receive three times the amount of each claim for compensation submitted by defendant in violation of 740 Ill. Comp. Stat. §92. Additionally, the Illinois State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**Count X**
**Indiana False Claims And Whistleblower Protection Act**
**IC 5-11-5.5-2(b)(1) and (2)**

196.    Relator repeats and realleges each and every allegation contained in paragraphs 1 through 129 above as though fully set forth herein.

197.    This is a claim for treble damages and penalties under the Indiana False Claims And Whistleblower Protection Act.

198.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Indiana State Government for payment or approval.

199.    By virtue of the acts described above, defendant knowingly made, used, or caused

38
Complaint

{00005890; 1}

1   to be made or used false records and statements, and omitted material facts, to induce the Indiana

2   State Government to approve and pay such false and fraudulent claims.

3        200.   The Indiana State Government, unaware of the falsity of the records, statements

4   and claims made, used, presented or caused to be made, used or presented by defendant, paid and

5   continues to pay the claims that would not be paid but for defendant's unlawful conduct.

6        201.   By reason of the defendant's acts, the State of Indiana has been damaged, and

7   continues to be damaged, in substantial amount to be determined at trial.

8        202.   Additionally, the Indiana State Government is entitled to a civil penalty of at least

9   $5,000 for each and every violation alleged herein.

10                            **Count XI**

11   **Louisiana Medical Assistance Programs Integrity Law**
**La. Rev. Stat. § 437 et seq.**

12

13        203.   Relator repeats and realleges each and every allegation contained in paragraphs 1

  through 129 above as though fully set forth herein.

14

15        204.   This is a claim for treble damages and penalties under the Louisiana Medical

  Assistance Programs Integrity Law.

16

17        205.   By virtue of the acts described above, defendant knowingly presented or caused to

  be presented, false or fraudulent claims to the Louisiana State Government for payment or

18   approval.

19        206.   By virtue of the acts described above, defendant knowingly made, used, or caused

20   to be made or used false records and statements, and omitted material facts, to induce the

21   Louisiana State Government to approve and pay such false and fraudulent claims.

22        207.   The Louisiana State Government, unaware of the falsity of the records, statements

23   and claims made, used, presented or caused to be made, used or presented by defendant, paid and

24   continues to pay the claims that would not be paid but for defendant's unlawful conduct.

25        208.   By reason of the defendant's acts, the State of Louisiana has been damaged, and

26   continues to be damaged, in substantial amount to be determined at trial.

27        209.   Additionally, the Louisiana State Government is entitled to the maximum penalty

28   of $10,000 for each and every violation alleged herein.

{00005890; 1}

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Count XII
### Massachusetts False Claims Law
### Mass. Gen. Laws ch. 12 §5B(1)-(3)

210.   Relator repeats and realleges each and every allegation contained in paragraphs 1 through 129 above as though fully set forth herein.

211.   This is a claim for treble damages and penalties under the Massachusetts False Claims Law.

212.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Massachusetts State Government for payment or approval.

213.   By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Massachusetts State Government to approve and pay such false and fraudulent claims.

214.   The Massachusetts State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that would not be paid but for defendant's unlawful conduct.

215.   By reason of the defendant's acts, the State of Massachusetts has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

216.   Additionally, the Massachusetts State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

### Count XIII
### Michigan Medicaid False Claims Act
### Mich. Comp. Laws. §400.601

217.   Relator repeats and realleges each and every allegation contained in paragraphs 1 through 129 above as though fully set forth herein.

218.   This is a claim for treble damages and penalties under the Michigan Medicaid False Claims Act.

219.   By virtue of the acts described above, defendant knowingly presented or caused to

40
Complaint

{00005890; 1}

1  be presented, false or fraudulent claims to the Michigan State Government for payment or

2  approval.

3     220.   By virtue of the acts described above, defendant knowingly made, used, or caused

4  to be made or used false records and statements, and omitted material facts, to induce the

5  Michigan State Government to approve and pay such false and fraudulent claims.

6     221.   The Michigan State Government, unaware of the falsity of the records, statements

7  and claims made, used, presented or caused to be made, used or presented by defendant, paid and

8  continues to pay the claims that would not be paid but for defendant's unlawful conduct.

9     222.   By reason of the defendant's acts, the State of Michigan has been damaged, and

10  continues to be damaged, in substantial amount to be determined at trial.

11     223.   Additionally, the Michigan State Government is entitled to the maximum penalty

12  of $10,000 for each and every violation alleged herein.

13                      **Count XIV**
                   **Nevada False Claims Act**
14            **Nev. Rev. Stat. Ann. §357.040(1)(a)-(c)**

15     224.   Relator repeats and realleges each and every allegation contained in paragraphs 1

16  through 129 above as though fully set forth herein.

17     225.   This is a claim for treble damages and penalties under the Nevada False Claims

18  Act.

19     226.   By virtue of the acts described above, defendant knowingly presented or caused to

20  be presented, false or fraudulent claims to the Nevada State Government for payment or approval.

21     227.   By virtue of the acts described above, defendant knowingly made, used, or caused

22  to be made or used false records and statements, and omitted material facts, to induce the Nevada

23  State Government to approve and pay such false and fraudulent claims.

24     228.   The Nevada State Government, unaware of the falsity of the records, statements

25  and claims made, used, presented or caused to be made, used or presented by defendant, paid and

26  continues to pay the claims that would not be paid but for defendant's unlawful conduct.

27     229.   By reason of the defendant's acts, the State of Nevada has been damaged, and

28  continues to be damaged, in substantial amount to be determined at trial.

{00005890; 1}

230.   Additionally, the Nevada State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**Count XV**
**New Hampshire False Claims Act**
**N.H. Rev. Stat. Ann. §167:61-b(I)(a)-(c)**

231.   Relator repeats and realleges each and every allegation contained in paragraphs 1 through 129 above as though fully set forth herein.

232.   This is a claim for treble damages and penalties under the New Hampshire False Claims Act.

233.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the New Hampshire State Government for payment or approval.

234.   By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New Hampshire State Government to approve and pay such false and fraudulent claims.

235.   The New Hampshire State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that would not be paid but for defendant's unlawful conduct.

236.   By reason of the defendant's acts, the State of New Hampshire has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

237.   Additionally, the New Hampshire State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**Count XVI**
**New Jersey False Claims Act**
**N.J. Stat. § 2A:32C-1**

238.   Relator repeats and realleges each and every allegation contained in paragraphs 1 through 129 above as though fully set forth herein.

239.   This is a claim for treble damages and penalties under the New Jersey False Claims

42
Complaint

{00005890; 1}

Act.

240.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the New Jersey State Government for payment or approval.

241.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New Jersey State Government to approve and pay such false and fraudulent claims.

242.    The New Jersey State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that would not be paid but for defendant's unlawful conduct.

243.    By reason of the defendant's acts, the State of New Jersey has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

244.    Additionally, the New Jersey State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

## Count XVII
### New Mexico Medicaid False Claims Act, N.M. Stat. Ann. §27-2F-1 et seq. and New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. §41-14-1 et seq

245.    Relator repeats and realleges each and every allegation contained in paragraphs 1 through 129 above as though fully set forth herein.

246.    This is a claim for treble damages and penalties under the New Mexico Medicaid False Claims Act and the New Mexico Fraud Against Taxpayers Act.

247.    By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the New Mexico State Government for payment or approval.

248.    By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New Mexico State Government to approve and pay such false and fraudulent claims.

249.    The New Mexico State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by

43
Complaint

{00005890; 1}

1  defendant, paid and continues to pay the claims that would not be paid but for defendant's

2  unlawful conduct.

3       250.    By reason of the defendant's acts, the State of New Mexico has been damaged, and

4  continues to be damaged, in substantial amount to be determined at trial.

5       251.    Additionally, the New Mexico State Government is entitled to the maximum civil

6  penalty of $10,000 for each and every violation alleged herein.

7                          **Count XVIII**
                    **New York False Claims Act**
8                    **N.Y. State Fin. § 187**

9

10      252.    Relator repeats and realleges each and every allegation contained in paragraphs 1

11  through 129 above as though fully set forth herein.

12      253.    This is a claim for treble damages and penalties under the New York False Claims

    Act.
13

14      254.    By virtue of the acts described above, defendant knowingly presented or caused to

15  be presented, false or fraudulent claims to the New York State Government for payment or

    approval.
16

17      255.    By virtue of the acts described above, defendant knowingly made, used, or caused

18  to be made or used false records and statements, and omitted material facts, to induce the New

    York State Government to approve and pay such false and fraudulent claims.
19

20      256.    The New York State Government, unaware of the falsity of the records, statements

21  and claims made, used, presented or caused to be made, used or presented by defendant, paid and

    continues to pay the claims that would not be paid but for defendant's unlawful conduct.
22

23      257.    By reason of the defendant's acts, the State of New York has been damaged, and

    continues to be damaged, in substantial amount to be determined at trial.
24

25      258.    Additionally, the New York State Government is entitled to the maximum penalty

    of $12,000 for each and every violation alleged herein.
26

27

28
                                    44
                                Complaint

{00005890; 1}

**Count XIX**
**Oklahoma Medicaid False Claims Act**
**63 Okl. St. § 5053**

259.   Relator repeats and realleges each and every allegation contained in paragraphs 1 through 129 above as though fully set forth herein.

260.   This is a claim for treble damages and penalties under the Oklahoma Medicaid False Claims Act.

261.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Oklahoma State Government for payment or approval.

262.   By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Oklahoma State Government to approve and pay such false and fraudulent claims.

263.   The Oklahoma State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that would not be paid but for defendant's unlawful conduct.

264.   By reason of the defendant's acts, the State of Oklahoma has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

265.   Additionally, the Oklahoma State Government is entitled to the maximum civil penalty of $10,000 for each and every violation alleged herein.

**Count XX**
**Rhode Island False Claims Act**
**R.I. Gen. Laws § 9-1.1-1**

266.   Relator repeats and realleges each and every allegation contained in paragraphs 1 through 129 above as though fully set forth herein.

267.   This is a claim for treble damages and penalties under the Rhode Island False Claims Act.

268.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Rhode Island State Government for payment or

{00005890; 1}

1 | approval.

2 | 269. By virtue of the acts described above, defendant knowingly made, used, or caused

3 | to be made or used false records and statements, and omitted material facts, to induce the Rhode

4 | Island State Government to approve and pay such false and fraudulent claims.

5 | 270. The Rhode Island State Government, unaware of the falsity of the records,

6 | statements and claims made, used, presented or caused to be made, used or presented by

7 | defendant, paid and continues to pay the claims that would not be paid but for defendant's

8 | unlawful conduct.

9 | 271. By reason of the defendant's acts, the State of Rhode Island has been damaged, and

10 | continues to be damaged, in substantial amount to be determined at trial.

11 | 272. Additionally, the Rhode Island State Government is entitled to civil penalties for

12 | each and every violation alleged herein.

**Count XXI**
**Tennessee False Claims Act and Medicaid False Claims Act**
**Tenn. Code Ann. §§ 4-18-103(a) and 71-5-182(a)(1)**

13 |

14 |

15 | 273. Relator repeats and realleges each and every allegation contained in paragraphs 1

16 | through 129 above as though fully set forth herein.

17 | 274. This is a claim for treble damages and penalties under the Tennessee False Claims

18 | Act and Tennessee Medicaid False Claims Act.

19 | 275. By virtue of the acts described above, defendant knowingly presented or caused to

20 | be presented, false or fraudulent claims to the Tennessee State Government for payment or

21 | approval.

22 | 276. By virtue of the acts described above, defendant knowingly made, used, or caused

23 | to be made or used false records and statements, and omitted material facts, to induce the

24 | Tennessee State Government to approve and pay such false and fraudulent claims.

25 | 277. The Tennessee State Government, unaware of the falsity of the records, statements

26 | and claims made, used, presented or caused to be made, used or presented by defendant, paid and

27 | continues to pay the claims that would not be paid but for defendant's unlawful conduct.

28 | 278. By reason of the defendant's acts, the State of Tennessee has been damaged, and

1    continues to be damaged, in substantial amount to be determined at trial.

2        279.    Additionally, the Tennessee State Government is entitled to the maximum penalty

3    of $10,000 for each and every violation alleged herein.

4                            **Count XXII**
                  **Texas Medicaid Fraud Prevention Law**
5                  **Tex. Hum. Res. Code Ann. §36.002**

6

7        280.    Relator repeats and realleges each and every allegation contained in paragraphs 1

8    through 129 above as though fully set forth herein.

9        281.    This is a claim for treble damages and penalties under the Texas Medicaid Fraud

10   Prevention Law.

11       282.    By virtue of the acts described above, defendant knowingly presented or caused to

12   be presented, false or fraudulent claims to the Texas State Government for payment or approval.

13       283.    By virtue of the acts described above, defendant knowingly made, used, or caused

14   to be made or used false records and statements, and omitted material facts, to induce the Texas

     State Government to approve and pay such false and fraudulent claims.
15
         284.    The Texas State Government, unaware of the falsity of the records, statements and
16
     claims made, used, presented or caused to be made, used or presented by defendant, paid and
17
     continues to pay the claims that would not be paid but for defendant's unlawful conduct.
18
         285.    By reason of the defendant's acts, the State of Texas has been damaged, and
19
     continues to be damaged, in substantial amount to be determined at trial.
20
         286.    Additionally, the Texas State Government is entitled to the maximum penalty of
21
     $10,000 for each and every violation alleged herein.
22
                            **Count XXIII**
23                **Virginia Fraud Against Taxpayers Act**
                  **Va. Code Ann. §8.01-216.3(a)(1)-(3)**
24

25       287.    Relator repeats and realleges each and every allegation contained in paragraphs 1

26   through 129 above as though fully set forth herein.

27       288.    This is a claim for treble damages and penalties under the Virginia Fraud Against

28   Taxpayers Act.

{00005890; 1}

289.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Virginia State Government for payment or approval.

290.   By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Virginia State Government to approve and pay such false and fraudulent claims.

291.   The Virginia State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that would not be paid but for defendant's unlawful conduct.

292.   By reason of the defendant's acts, the State of Virginia has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

293.   Additionally, the Virginia State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

### Count XXIV
### Wisconsin False Claims For Medical Assistance Act
### Wis. Stat §20.931 et seq.

294.   Relator repeats and realleges each and every allegation contained in paragraphs 1 through 129 above as though fully set forth herein.

295.   This is a claim for treble damages and penalties under the Wisconsin False Claims For Medical Assistance Act.

296.   By virtue of the acts described above, defendant knowingly presented or caused to be presented, false or fraudulent claims to the Wisconsin Government for payment or approval.

297.   By virtue of the acts described above, defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Wisconsin to approve and pay such false and fraudulent claims.

298.   The State of Wisconsin, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendant, paid and continues to pay the claims that would not be paid but for defendant's unlawful conduct.

299.   By reason of the defendant's acts, the State of Wisconsin has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

48
Complaint

{00005890; 1}

300.    Additionally, the State of Wisconsin is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**Prayer**

WHEREFORE, Relator prays for judgment against the defendant as follows:

1.    that defendant cease and desist from violating 31 U.S.C. §3729 et seq., and the counterpart provisions of the state statutes set forth above;

2.    that this Court enter judgment against defendant in an amount equal to three times the amount of damages the United States has sustained because of defendant's actions, plus a civil penalty of not less than $5,000 and not more than $11,000 for each violation of 31 U.S.C. §3729;

3.    that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of California has sustained because of defendant's actions,  plus a civil penalty of $10,000 for each violation of Cal. Govt. Code §12651(a);

4.    that this Court enter judgment against defendant in an amount equal to three times the amount of each claim for compensation submitted by defendant in violation of Cal. Ins. Code §1871.7(b), plus a civil penalty of $10,000 for each violation of Cal. Ins. Code §1871.7(b);

5.    that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Delaware has sustained because of defendant's actions, plus a civil penalty of $11,000 for each violation of 6 Del. C. §1201(a);

6.    that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Florida has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of Fla. Stat. Ann. §68.082(2);

7.    that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Georgia has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of Georgia Code Ann. §49-4-168;

8.    that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Hawaii has sustained because of defendant's actions, plus a civil penalty of $10,000 for each violation of Haw. Rev. Stat. §661-21(a);

9.    that this Court enter judgment against defendant in an amount equal to three times the amount of damages the State of Illinois has sustained because of defendant's actions, plus a

{00005890; 1}

**Demand for Jury Trial**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated:  July 15, 2008

PHILLIPS & COHEN LLP

By: _Lauy Zoglin_

Erika A. Kelton (State Bar No. 133300)
Larry P. Zoglin (State Bar No. 87313)
PHILLIPS & COHEN LLP
2000 Massachusetts Ave., NW
Washington, DC. 20036
Telephone: (202) 833-4567
Fax: (202) 833-1815
ekelton@phillipsandcohen.com
lpz@pcsf.com

PHILLIPS & COHEN LLP
131 Steuart St., Suite 501
San Francisco, CA 94105
Telephone: (415) 836-9000
Fax: (415) 836-9001

Attorneys for Qui Tam Plaintiff James Garbe

52
Complaint

{00005890; 1}