IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel* JAMES GARBE, *et al.* | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No.: **3:12-cv-00881-MJR-PMF** |
| | ) |
| KMART CORPORATION, | )<br>) |
| Defendants. | ) |

**ORDER**

**FRAZIER, Magistrate Judge:**

This matter comes before the court on Relator's oral motion to compel production of documents. A discovery dispute conference was held on May 15, 2014. *See* Doc. 157. Ruling was reserved on three distinct sets of documents. *See id*. This order addresses the following two of the three sets of documents, both of which have been inspected *in camera*.

**A. Data Compiled in Response to 2009 OIG HHS Subpoena**

In 2009, the Office of the Inspector General ("OIG") for the U.S. Department of Health and Human Services ("HHS") began conducting an investigation into possible improper claims submitted to Medicare by K-Mart Corporation. The OIG office in Santa Ana, California issued a subpoena ("OIG subpoena") on April 20, 2009. K-Mart hired the law firm of Greenberg Taurig, LLP to facilitate its response to the OIG subpoena. Greenberg Taurig helped K-Mart secure an agreement with OIG stating that "confidential proprietary" business information would be protected; the standard type of confidential business information typically kept confidential in discovery by a protective order under Rule 26(c)(G) of the Federal Rules of Civil Procedure.

1

In response to the OIG subpoena, K-Mart collected, reviewed, and produced more than 8,400 documents from 25 custodians. Greenburg Taurig attorneys also created and produced a subset of transactional data in an easier-to-understand format. Greenburg Taurig attorney Jeffrey W. Greene recalled in the discovery dispute conference that the primary motivation behind creating the subset was to appear cooperative in order to hopefully obtain a more favorable result in the investigation so that K-Mart would not ultimately have to make expenditures of money to defend a case brought against it by the federal government. K-Mart also withheld many documents from OIG on the basis of attorney-client privilege and work product protection.

In this case, K-Mart has turned over its entire response to the 2009 OIG subpoena to Relator in discovery, except for 1) the documents it also withheld from the government on the basis of attorney-client privilege and work product protection and 2) the subset of transactional data it gave to the government in the alternative format. The subset of transactional data is at issue here. Relator argues that any attorney work product protection has been forfeited by its disclosure to the government. K-Mart urges the court to find that the doctrine of "selective waiver" applies, and the subset of transactional data should remain protected in this case as attorney work product.

Federal courts have long recognized the "strong public policy underlying the work-product doctrine," which has been incorporated into Federal Rule of Civil Procedure 26(b)(3). *Upjohn Co. v. United States*, 449 U.S. 383, 398, 101 S. Ct. 677, 687, 66 L. Ed. 2d 584 (1981) (citing *United States v. Nobles*, 422 U.S. 225, 236-240, 95 S.Ct. 2160, 2169-2171, 45 L.Ed.2d 141 (1975)). "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative ..." FED. R. CIV. P. 26(b)(3). The work product doctrine serves the interests of clients, the cause of

justice, and the legal profession by protecting from disclosure to an adverse party the written statements, private memoranda, and personal recollections prepared or formed by an attorney. *Upjohn*, 449 U.S. at 397.

While the court certainly must guard against the unwarranted disclosure attorney work product, it is also incumbent upon the attorneys anticipating or involved in litigation to take appropriate steps to closely guard confidential information. "Knowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large…" *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) (citations omitted). "[I]t is well-established that the work product privilege may be waived by disclosures to third parties "in a manner which substantially increases the opportunity for potential adversaries to obtain the information." *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412, 419 (N.D. Ill. 2006) (citations omitted).

Here, K-Mart's attorneys knowingly and voluntarily turned over the subset of transactional prepared in response to the 2009 OIG subpoena in order to obtain a more favorable outcome in the OIG investigation. While K-Mart may not have been aware of a pending False Claims Act case at this time (the case was filed under seal in 2008), it would not have been a stretch to conclude that the subset of data was prepared in anticipation of criminal or civil litigation brought by the federal government. For this reason, the data subset likely met the requirements for work product protection prior to its disclosure to the government. The only question that remains is whether K-Mart forfeited protection of the data by its disclosure to an adverse party.

K-Mart urges the court to find that it "selectively waived" work product production to the federal government, and that the data should remain protected from disclosure from Relator. K-

Mart claims the law of this circuit supports such a "selective waiver" doctrine. In 2003, the Seventh Circuit Court of Appeals arguably rejected the selective waiver doctrine when it stated that "[k]nowing disclosure to a third party *almost* invariably surrenders the privilege with respect to the world at large; *selective disclosure is not an option*." *Burden-Meeks*, 319 F.3d at 899 (emphasis added) (citing *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126–27 (7th Cir. 1997); *United States v. Hamilton*, 19 F.3d 350, 353 (7th Cir. 1994)). The *Burden-Meeks* decision acknowledges that only one other court of appeals recognizes that selective disclosure does not always waive confidentiality but that the "majority view is otherwise." *See id*. (citing *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977) (en banc) as court of appeals permitting selective waiver and *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 307–14 (6th Cir. 2002) as court of appeals rejecting it).

Although *Burden-Meeks* seemingly rejects the selective waiver doctrine ("selective disclosure is not an option"), it cites the *Dellwood Farms* decision (a selective waiver case) without expressly overruling it. *See id*. That case held that government did not waive its law enforcement investigatory privilege when plaintiffs in a class action lawsuit subpoenaed audiotapes that government attorneys played to a law firm representing Archer Daniels Midland's ("ADM") outside directors (without obtaining a confidentiality agreement) in connection to a criminal case(s) against them. *See Dellwood Farms*, 128 F.3d at 1127-28. The audiotapes were presumably played by government attorneys to adduce a guilty verdict, and the plaintiffs in a class action suit argued that the government waived confidentiality by playing the audiotapes to a third-party. *See id*. at 1124. Writing for the majority, Chief Judge Posner examined the reasons why courts have been unwilling to permit selective waiver, such as impeding the search for the truth, "a fear that selective disclosure will be used to obtain a

4

strategic advantage, and puzzlement why if the information is really confidential it was disclosed except for some nefarious strategic purpose." *See id*. at 1127. In the end, Chief Judge Posner concluded that none of these reasons applied to the facts and circumstances of the *Dellwood Farms* case primarily because the government was not an adversary of the class action plaintiffs, "using coy disclosure to gain litigating leverage over them." *See id*.

Because the Seventh Circuit Court of Appeals has seemingly left open the possibility of selective waiver, district courts in this circuit have found it permissible to find selective waiver in some circumstances. *See, e.g., Jaffe*, 244 F.R.D. at 433 (N.D. Ill. 2006) (finding that selective waiver may be appropriate where the disclosing party took steps to preserve its privilege). In *Jaffe*, Household, a bank, voluntarily disclosed confidential attorney documents to the Securities and Exchange Commission ("SEC") in connection to a securities fraud investigation. *See id*. Prior to disclosure, Household and the SEC entered into a confidentiality agreement that expressly stated that "neither the Committee nor Household intend to waive the protections of the attorney work product doctrine, attorney-client privilege, or any other privilege applicable as to third parties." *Id*. Based on the confidentiality agreement, the court concluded in *Jaffe* that the Household took appropriate steps to preserve the confidentiality of attorney documents and denied a motion to compel. *See id*.

The court has reviewed the subset of transactional data *in camera* and grants Relator's oral motion to compel. Although the facts of this case are similar to circumstances in *Jaffe*, this case is distinguishable. In *Jaffe*, Household and the SEC entered into a confidentiality agreement that expressly protected attorney work product. *See id*. K-Mart points out that it also entered into a confidentiality agreement with OIG prior to its 2009 production in response to the OIG subpoena. A copy of the 2009 confidentiality agreement was submitted at May 15 discovery

5

dispute conference. It appears that the purpose of this agreement, however, was not to protect attorney work product. Unlike the agreement in *Jaffe*, the words "attorney", "work product", or "privilege" do not appear anywhere in the agreement. Rather, the agreement appears to be targeting the type of sensitive business information typically protected in discovery by Rule 26(c) of the Federal Rules of Civil Procedure.[1]

Even if the court could align this case with *Jaffe*, application the selective waiver doctrine is not appropriate in this case. It is clear that the Seventh Circuit Court of Appeals does not look favorably upon the selective waiver doctrine. *See Burden-Meeks*, 319 F.3d at 899. Although *Dellwood Farms* stands for the possibility of selective waiver in some limited circumstances, the present case is distinguishable. Unlike the Relator in this case, the class action plaintiffs in *Dellwood Farms* were not attempting to compel production of documents from an adversary. *See Dellwood Farms*, 128 F.3d at 1127. Here, both the federal government and Relator are adversaries of K-Mart under essentially the same circumstances. K-Mart should not be permitted to "pick and choose" to which adversary it waives work product protection and which advesary does not. *See In re Columbia*, 293 F.3d at 306 (citing *In re Worlds of Wonder Securities Litigation*, 147 F.R.D. 208 (N.D.Cal. 1992)).

Furthermore, K-Mart made a calculated decision to intentionally relinquish work product protection in order to obtain a strategic advantage in the 2009 OIG investigation. This disclosure occurred in California, which is part of the Ninth Circuit. The Ninth Circuit did not have a firm position on selective waiver in 2009 but has since rejected it. *See In re Pac. Pictures Corp.*, 679

---

[1] Statements made during the May 15 discovery dispute conference confirm that protection of proprietary business information was the primary concern in 2009. I do not discount the possibility that other confidentiality assurances were made by the federal government prior to disclosure. The June 17, 2009 agreement with OIG referenced in this order is the only agreement in court's possession. Nonetheless, the reasoning of my decision does not ultimately depend on the existence of confidentiality agreements with the government.

F.3d 1121, 1127 (9th Cir. 2012). The D.C. Circuit, where the OIG of HHS is headquartered, has long rejected selective waiver, *see Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981), as has almost every other circuit, *see United States v. Hudson*, No. 13-20063-01, 2013 WL 4768084 *4 (D. Kan. Sept. 5, 2013) (collecting cases). Obviously, caselaw from other circuits has no binding authority on the issue at hand, but it does go to whether or not K-Mart intentionally relinquished a right. Similarly, while some cases promote the use of confidentiality agreements to selectively preserve work product protection, the express terms of the federal rules do nothing to encourage this practice. *See* FED. R. EVID. 502(e) (providing that an "agreement on the effect of disclosure in a federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order."); *see also* Patrick M. Emery, *The Death of Selective Waiver: How New Federal Rule of Evidence 502 Ends the Nationalization Debate*, 27 J.L. & COM. 231 (2009) (detailing the circumstances surrounding a failed effort to incorporate the selective waiver doctrine into the Federal Rules of Evidence). With federal law existing in this formulation, K-Mart made a strategic calculation; did the potential risk of waiver of work product protection outweigh the potential benefit it would receive by appearing cooperative with the federal government? K-Mart concluded that the potential benefits outweighed the risk. It now seeks withhold the same information it produced to an adversary from another adversary.

The policy reasons for disallowing selective waiver in this case outweigh the reasons for allowing it. In the May 15 discovery dispute conference, K-Mart went to great lengths to emphasize that not allowing selective waiver under these circumstances would discourage corporate cooperation with government investigations. While increased cooperation with the government is most certainly a laudable end, this policy ground for permitting selective waiver has been repeatedly rejected. *See In re Columbia*, 293 F.3d at 303. Most pointedly, the attorney

client privilege and work product doctrines do not exist to foster full and frank conversation with the government. *See id*. at 306. Rather, the chief purpose of attorney work product protection is to permit an attorney to prepare a client's case in confidence. *See id*. Disclosure of protected attorney work product is a strategic litigation decision. As the Sixth Circuit Court of Appeals stated in *In re Columbia*:

> Even more than attorney-client privilege waiver, waiver of the protections afforded by the work product doctrine is a tactical litigation decision. Attorney and client both know the material in question was prepared in anticipation of litigation; the subsequent decision on whether or not to "show your hand" is quintessential litigation strategy. Like attorney-client privilege, there is no reason to transform the work product doctrine into another "brush on the attorney's palette," used as a sword rather than a shield.

*Id*. at 306-07 (citation omitted).

*In re Columbia* and other circuit courts have questioned whether the government, as a matter of public policy, "should assist in obfuscating the 'truth-finding process' by entering into such confidentiality agreements" in the first place. *Id*. at 303 ("The investigatory agencies of the Government should act to bring to light illegal activities, not to assist wrongdoers in concealing the information from the public domain."). "It is not necessary for the courts to create a new method, one which effectively prevents future litigants from obtaining the same information, when other means (means which will not result in the information being concealed from the public) are available to the Government." *Id*.

For these reasons, K-Mart is ordered to produce to Relator, within 14 days of this order, the transactional data subset produced in an alternative format in response to 2009 OIG subpoena.[2] As with other sensitive business information produced in this litigation, K-Mart may

---

[2] I recognize that I came to different conclusion under similar circumstances in *U.S.A. ex rel. Yarberry, v. Sears Holding Corporation*, No. 09-588 (S.D.Ill. Jan. 23, 2013). After in-depth

find it appropriate to produce the information subject to the confidentiality order entered in this case.

### B. Communications with U.S. Attorney's Office for the Central District of California

Prior to this case being transferred to this district, K-Mart engaged in settlement discussions with the U.S. Attorney's Office for the Central District of California. On February 17, 2011, documents submitted to the court indicate K-Mart and U.S. Attorney's Office began discussing settlement and agreed that communications made during the settlement process would remain confidential. In a False Claims Act case, the "Government may settle the action with the defendant notwithstanding the objections of the person initiating the action…" 31 U.S.C. § 3730. During these settlement negotiations, K-Mart's shared its mental impressions, conclusions, opinions, and/or legal theories concerning the litigation with the U.S. Attorney's Office. Relator argues that the confidentiality of these representations (attorney work product) have been waived and are now subject to production as relevant information reasonably calculated to lead to the discovery of admissible evidence (*see* FED. R. CIV. P. 26(b)(1)).

As a general principle, the Federal Rules of Evidence prohibit the admission of representations made during settlement negotiations at trial. *See* FED. R. EVID. 408. However, it is also true that information sought in discovery need not be admissible at trial. *See* FED. R. CIV. P. 26(b)(1). It must also be recognized that the discoverability of communications made during settlement negotiations could have a "chilling effect" on the willingness of litigants to engage in such discussions. *See Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 652 (N.D. Ill. 1994). Courts finding themselves in this predicament sometimes apply a "balancing of interests"

---

involvement in numerous discovery disputes in both this case and *Yarberry*, I have reconsidered my prior ruling.

analysis to reach a conclusion as to whether discovery should be permitted. *See Clark v. Experian Info. Solutions, Inc.*, No. 03-7882, 2006 WL 931677 *4 (N.D. Ill. Apr. 10, 2006) (citing *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 368-69 (N.D.Ill.2001)). Applying this test, the court will analyze the settlement documents to determine whether the need for the settlement materials outweighs the potentially chilling effect on future settlement negotiations.

After an *in camera* review of the settlement documents, the court finds that the potential chilling effect outweighs the need for the documents. Relator has not sufficiently demonstrated why the materials are needed except to assert that confidentiality of the attorney work product has been waived. All documents submitted to the government in connection to settlement negotiations occurring on or after February 17, 2011 shall remain confidential. To the extent that any materials produced in Part A overlap with Part B, the Defendants are directed to produce the overlapping documents.

**SO ORDERED.**

**DATED: May 29, 2014.**

*s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE