UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES ex rel. ) | |
| JAMES GARBE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 3:12-cv-881-NJR-PMF |
| vs. ) | |
| ) | |
| KMART CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT KMART CORPORATION'S MOTION TO EXCLUDE THE
PROFFERED EXPERT TESTIMONY OF DALE A. CHAMBERLAIN UNDER
*DAUBERT* AND INCORPORATED MEMORANDUM OF LAW**

Defendant Kmart Corporation files this Motion to Exclude the Expert Testimony of Dale A. Chamberlain under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702. Mr. Chamberlain's testimony is inadmissible under these standards for three reasons: (1) Mr. Chamberlain's Report largely consists of irrelevant background information and no actual opinion; (2) Mr. Chamberlain proffers no opinion for which an expert is needed; and (3) Mr. Chamberlain's only purported opinion is a legal conclusion and totally inappropriate for an expert report.

**I.   BACKGROUND**

Relator alleges that Kmart violated the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, and a variety of state false claims acts by knowingly submitting incorrect "usual and customary" ("U&C") prices in retail pharmacy claims submitted to government healthcare programs. In

particular, Relator complains that Kmart should have submitted the discount price offered to enrollees in Kmart's generic drug discount programs as its U&C price.

Under the guise of Mr. Chamberlain's "expert opinion," Relator contends that U&C price is defined not by the applicable statute, regulation or contract, but by the National Council for Prescription Drugs Program ("NCPDP"). Not only is this a legal conclusion inappropriately made by an expert, it is wrong. The NCPDP is merely the industry standard for electronic transmission and adjudication of pharmacy claims, not an authority on U&C pricing. In other words, NCPDP simply defines the format of an electronic pharmacy claim, i.e., what the claim should look like. Even as Relator's other experts note, U&C is defined, not by the NCPDP, but by the applicable statute, regulation, and/or contract with Kmart.[1] Moreover, the NCPDP itself concedes that its definitions are not mandatory. Mr. Chamberlain's Report is nothing more than counsel's attempt to sidestep Relator's burden to prove, on a claim-by-claim basis, that Kmart's U&C price did not comply with the operative statutory, regulatory or contractual U&C definition; thus, Mr. Chamberlain's purported "opinions" should be excluded in their entirety.

## II.   ADMISSIBILITY OF EXPERT TESTIMONY IS GOVERNED BY FEDERAL RULES OF EVIDENCE 403, 702 AND 703 AND *DAUBERT*.

The admissibility of expert testimony is a preliminary question for the Court under Federal Rules of Evidence 403, 702 and 703 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Under *Daubert*, the trial court is charged with the role

---

[1] *See,* Report of Susan Hayes (attached as Ex. F) at 4-5 ("[o]ther industry group and statutes and regulations define U&C…"); at 11-15 (defining U&C under the various contracts Kmart entered with their Plan Benefit Managers (PBMs)). *See* Report of Joel W. Hay, Ph.D. (attached as Ex. G) at 5 ("[i]f the patient has drug coverage under certain government health care programs, such as Medicare or Medicaid, then the retail pharmacy will similarly be reimbursed an 'allowed' amount

2

of "gatekeeper," with a duty to determine the reliability and relevance of expert testimony and to exclude the type of "unsupported speculation" that inevitably leads to jury confusion. *Daubert*, 509 U.S. at 593. "[R]ule [702]… 'establishes a standard of evidentiary reliability.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert*, 509 U.S. at 590).

Expert testimony is admissible if the testimony is "relevant to a fact in issue, is based on sufficient facts or data, and is the product of reliable scientific or other experts methods that are properly applied." *Stollings v. Ryobi Tech., Inc.,* 725 F.3d 753, 765 (7th Cir. 2013). In considering the admissibility of expert testimony under Federal Rules of Evidence 702 and 703, a court should also be mindful of other applicable rules, such as Federal Rule of Evidence 403, which permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury…." *Daubert*, 509 U.S. at 595 (quoting Fed. R. Evid. 403). The trial court's role in this regard is significant because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403… exercises more control over experts than over lay witnesses." *Id.* (citation and internal quotation marks omitted).

The burden of proof is on the proponent of the expert witness to show that the expert testimony satisfies the rule. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1997). To meet this burden, Relator must show both that (1) the expert is qualified by "sufficient specialized knowledge to assist the jurors" regarding the subject matter at issue, *Kuhmo Tire,* 526 U.S. at 156, and (2) the proffered testimony is both reliable and relevant, *Daubert,* 509 U.S. at 597. Here, Relator cannot

---

that is either negotiated with the government program or set by federal or state statute").

3

establish the admissibility of the challenged opinions by a preponderance of the evidence. *Id*. at 593 n.10.

### III. MR. CHAMBERLAIN'S OPINIONS DO NOT WITHSTAND SCRUTINY UNDER THE FEDERAL RULES OF EVIDENCE OR *DAUBERT*.

#### A. Mr. Chamberlain's Report is Largely Devoid of Opinion and Consists Mostly of Irrelevant Background Information.

What stands out about Mr. Chamberlain's Report is what is missing: actual opinion (much less actual *expert* opinion). Indeed, the Report goes on for nearly four pages about the history of, and policy behind, the NCPDP standard. *See* Report of Dale A. Chamberlain ("Report") at 1-4 (attached hereto as Ex. A). As discussed below, this is not opinion and is irrelevant to whether Kmart's U&C price was consistent with the governing statutory, regulatory or contractual definition of U&C.

To show a violation of the FCA, the Relator must generally show: (1) the presentment of a false or fraudulent claim for payment or the use of a false record or statement material to a false or fraudulent claim; (2) "knowing" or "reckless" conduct by the defendant with respect to the false claim or statement; and, (3) evidence that the falsity was "material" to the government's decision to pay the claim. *United States ex rel. Fowler v. Caremark RX*, *L.L.C.*, 496 F.3d 730, 740–41 (7th Cir. 2007) (addressing requirements of proving a violation of FCA under 31 U.S.C. § 3729(a)(1)), *overruled on other grounds* by *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009); *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005) (addressing requirements of proving a violation of FCA under 31 U.S.C. § 3729(a)(2)).

In this case, where Relator has alleged that Kmart violated the FCA and a variety of state FCAs by submitting incorrect U&C prices in retail pharmacy claims submitted to government

4

healthcare programs, Relator must prove on a claim-by-claim basis that Kmart's U&C price was not consistent with the operative U&C definition. With respect to state Medicaid programs, U&C is defined by statute or regulation. With respect to other government programs, such as Medicare Part D, Tricare and OWCP, U&C is defined by the relevant contract and/or payer sheet of the PBMs or administrators handling the claims processing for those programs. The NCPDP data form definition of U&C – which merely governs the *format* of the pharmacy claims – has no impact whatsoever on the analysis. Indeed, the NCPDP itself concedes its definitions are not mandatory. *See* NCPDP Telecommunication Version 5 Questions, Answers and Editorial Updates, No. 20.17 Usual and Customary Charge (426-DQ) at 224 (Nov. 2010), *available at* http://www.ncpdp.org/NCPDP/media/pdf/Version5-Editorial.pdf ("Third-party payer specifications may require specific values for adjudication of claims"); NCPDP Telecommunication Standard Implementation Guide V. D.0 (August 2010) at 121 (stating U&C is "required if needed per trading partner agreement") (attached, collectively, as Ex. B); *see also United States v. SuperValu, Inc.,* No. 3:08-cv-578-BBC, slip op. at 10 (W.D. Wisc. Sept. 20, 2011), ECF No. 104 ("The states implement and control the claims transmission process and calculate the reimbursement rates for each claim in reliance on their own statutes, regulations and billing procedures. As a participating provider in the Medicaid program, defendant must comply with all federal and state statutes, rules, regulations, guidance and provider manuals relating to the Medicaid program, including state rules for claims transmissions."); Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, Title I, § 101(a)(2), 117 Stat. 2098 (CMS may not "interfere with the negotiations between drug manufacturers and pharmacies and PDP sponsors"). Thus, this background

information on the NCPDP is merely superfluous, and it is neither necessary to understand any of Relator's claims nor will it provide the jury any guidance.

In addition, NCPDP background information is available through public sources. This publicly-available information is not opinion and requires no special skill, knowledge, or experience to formulate. "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *Ancho v. Pentek Corp.*, 157 F.3d 512, 518 (7th Cir. 1998) (citations and quotation marks omitted). An expert report that merely regurgitates publicly-available (and irrelevant) background information – like the vast majority of Mr. Chamberlain's Report here – does not satisfy this standard and should be excluded. *See id.; Lang v. Kohl's Food Stores, Inc.,* 217 F.3d 919, 923-24 (7th Cir. 2000) (affirming district court's exclusion of Plaintiff's expert witness because expert's report – which merely consisted of a list of clerks' duties plus a bald assertion – would not be helpful to the jury); *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 608 (7th Cir. 2006) (finding the district court erred in admitting expert testimony where expert did not tie his conclusions to specific citations to the policy manual and appeared to be giving "general observations regarding what is normal or usual business practice"); *Reed v. City of Chicago,* No. 01 C 7865, 2006 WL 1543928 at *3 (N.D. Ill. June 1, 2006) ("bare conclusions and naked opinions fail the first prong of the expert opinion admissibility test").

Indeed, with no actual opinion, the information contained in Mr. Chamberlain's Report will only serve to confuse and distract the jury from the issues at hand. *See Daubert*, 509 U.S. at 595 (citing Fed. R. Evid. 403) (it is appropriate to exclude evidence when the danger of confusing the

jury substantially outweighs the probative value of evidence)*; see also United States v. Hall,* 93 F.3d 1337, 1343 (7th Cir. 1996) ("Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403."); *Finchum v. Ford Motor Co.,* 57 F.3d 526, 532 (7th Cir. 1995) (excluding expert testimony that risked confusing the jury as to the applicable standard and would have been unduly prejudicial).

### B. Mr. Chamberlain's Testimony Contains General, Background Information that Would be Obvious to the Layperson.

Expert testimony is admissible only if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702, and to assist with "technical issues that laypeople would have difficulty resolving on their own," *Stollings,* 725 F.3d at 765. To do so, expert testimony must actually provide the jury with genuine expertise. *Id.* While it is true that a "trial court is not compelled to exclude the expert just because the testimony may, to a greater or lesser degree, cover matters that are within the average juror's comprehension…. [an expert] must testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury." *Ancho*, 157 F.3d at 519 (internal citations and quotation marks omitted); *see also In re C.R.Bard, Inc.*, 948 F. Supp. 2d 589, 608 (S.D.W. Va. 2013) ("expert testimony which merely regurgitates factual information that is better presented directly to the jury rather than through the testimony of an expert witness is properly excluded") (citations and internal quotation marks omitted).

Mr. Chamberlain's discussion of pharmacy claims adjudication at pages 4-7 of his Report is neither technical nor scientific, but something a lay person could understand without the assistance

7

of an expert. For instance, in describing this process, Mr. Chamberlain defines "patient" as a "person under the care of a health care professional, such as a physician or a pharmacist." *See* Report at 3. This definition does not require the explanation of an expert to understand. Mr. Chamberlain also defines Pharmacy Benefit Management ("PBM") as a company "primarily responsible for processing and paying prescription drug claims." *See* Report at 2. (Remarkably, Mr. Chamberlain takes this definition word-for-word from Wikipedia.[2]) Indeed, Relator has already elicited lay testimony on the definition of PBM, and can easily rely on the definitions provided by these lay witnesses, other fact witnesses, counsel and other experts. *See* Doerr Dep. pp. 184-85 (attached as Ex. C); Weber Dep. p. 61 (attached as Ex. D).

Moreover, Mr. Chamberlain is not a pharmacist, nor has he ever been a pharmacist, and was certainly not a Kmart pharmacist. Thus, he is not qualified to speak authoritatively as to Kmart's claims adjudication process. Relator already has detailed testimony from the pharmacists who actually worked at Kmart – those with the relevant, first-hand knowledge of Kmart's systems and processes – regarding Kmart's claims adjudication process. *See* Ex. C, Doerr Dep. at 204-209; Ex. D, Weber Dep. at 48-67. Though Relator's counsel likely will want to use the chart on page 5 of the Report to explain electronic prescribing and the pharmacy adjudication process function, Mr. Chamberlain is not uniquely qualified to authenticate it, and, in fact, the lay witness testimony of Kmart personnel is the best evidence of how adjudication at Kmart actually worked.

---

[2] *See* Pharmacy Benefit Management Page, Wikipedia, The Free Encyclopedia, *available at* http://en.wikipedia.org/wiki/Pharmacy_benefit_management (last viewed July 28, 2014) (attached as Ex. E).

Mr. Chamberlain's discussion of the claims adjudication process is unsubstantiated,[3] merely duplicative of fact witness testimony, something that does not take an expert to explain. It should be excluded. *See* Fed. R. Evid. 702 advisory committee's note (2000 amendment) (Court's gatekeeping function under *Daubert* requires more than simply "taking the expert's word for it"); *Manpower, Inc. v. Ins. Co. of Pa.,* 732 F.3d 796 (7th Cir. 2013) ("opinion connected to existing data only by the *ipse dixit* of the expert[…] is properly excluded under Rule 702") (internal citation and quotation marks omitted); *Georgia-Pacific Consumer Products LP v. Kimberly-Clark Corp.*, No. 09 C 2263, 2010 WL 1334714, at *7 (N.D. Ill. Mar. 31, 2010) (excluding expert witness testimony where, once impermissible legal conclusions were excluded, "little remain[ed] in his expert report that would be of value to the jury beyond a review of evidence for which fact witnesses could easily provide an adequate foundation"); *United States v. King-Vassel*, 728 F.3d 707, 715-17 (7th Cir. 2013) (reversing district court's holding that that the issues implicated in a FCA case were beyond the common understanding of a lay juror and therefore necessitated an expert); *Smith v. Hunt,* 707 F.3d 803, 809 (7th Cir. 2013) (holding it was within the ken of the average juror to appreciate the basic relationship between two opiates and reasonably conclude that desire for one might be related to desire for the other).

### C. Mr. Chamberlain's Purported Opinion is an Inadmissible Legal Conclusion.

---

[3] Mr. Chamberlain's Report fails to provide any authority or other support for his statements except in one place: on page 6, where he cites the NCPDP Data Dictionary for the NCPDP's definition of U&C. Then, at the end, he cites to a mere three publications that he reviewed in drafting his Report – one of which was written by him and from which he quotes paragraphs at a time. Report at 7. These sources, even if they do support his statements about the adjudication process generally, are certainly not better support for the adjudication process *at Kmart* than the testimony of the witnesses with actual knowledge of that process.

9

As stated above, Mr. Chamberlain offers little actual opinion in his Report. The only real opinion that he does purport to offer – located in the last paragraph of his seven page report – is nothing more than one improper legal conclusion, which inappropriately encroaches on this Court's exclusive role in interpreting and instructing the jury on the law to be applied.

Experts may not provide testimony consisting of legal conclusions. *See Good Shepherd Manor Found., Inc. v. City of Momence,* 323 F.3d 557, 564 (7th Cir. 2003) (refusing proffered expert testimony that was largely on "purely legal matters and made up solely of legal conclusion, such as conclusion that the city's actions violated the FHAA"); *see also U.S. Gypsum Co. v. Lafarge N. Am. Inc.,* 670 F. Supp. 2d 748, 765 (N.D. Ill. 2009) ("Where the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact."). "It is well settled that decisions regarding questions, interpretation, and explanation of applicable law are the province of the court. The court instructs the jury regarding the applicable law; the witnesses, even experts, do not." *Van Houten-Maynard v. ANR Pipeline Co.*, No. 89 C 0377, 1995 U.S. Dist. LEXIS 6751, at *9 (N.D. Ill. May 18, 1995); *see also Cage v. City of Chicago,* 979 F. Supp. 2d 787, 835 (N.D. Ill. 2013) ("If an expert's testimony does nothing more than attorneys can do in final arguments, it is not admissible because it is providing not knowledge, but mere opinion and advocacy.") (citation and internal quotation marks omitted).

Permitting Mr. Chamberlain to testify at trial regarding his opinion that "the NCPDP standard and its associated implementation guide must be followed without deviation," *see* Report at 7, would allow the jury to infer that it could "look to that witness for legal guidance" and would "impermissibly tilt[] the balance of power between the parties." *Harbor Ins. Co. v. Cont'l. Bank Corp.*, 922 F.2d 357, 366 (7th Cir. 1990). Not only is this opinion a blatant attempt to interpret

10

federal law, as discussed in Section A above, it is incorrect. This opinion is absolutely contradicted by the NCPDP itself and thus should be excluded. "Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories." *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) (encouraging the exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science, but markedly incorrect law).

Mr. Chamberlain's unfounded conclusion that the NCPDP standard must be followed without deviation and his related statements regarding the NCPDP are no different than the legions of expert opinions that have been excluded by courts for attempting to interpret the meaning of federal regulations because they are questions of law to be resolved by the court. *See, e.g., Bammerlin v. Navistar Int'l Transp. Corp.,* 30 F.3d 898, 900 (7th Cir. 1994) (reversing district court's admission of expert who improperly testified that the manufacturer's car assembly did not comply with federal safety regulations, holding that "[t]he meaning of federal regulations is not a question of fact, to be resolved by a jury after a battle of experts. It is a question of law, to be resolved by the court."); *Cent. Die Casting & Mfg. Co. v. Tokheim Corp.,* No. 93 C 7692, 1998 WL 812558, at *9 (N.D. Ill. Nov. 19, 1998) (excluding expert testimony about meaning of environmental regulations); *Marting v. Crawford & Co.*, No. 00 C 7132, 2004 WL 305724, at *3 (N.D. Ill. Jan. 9, 2004) (excluding expert testimony about Fair Labor Standard Act regulations); *McCabe v. Crawford & Co.,* 272 F. Supp. 2d 736, 740 (N.D. Ill. 2003) (excluding expert testimony about Fair Debt Collection Practice Act regulations). Here, Mr. Chamberlain similarly attempts to interpret the legal definition of U&C, something that is not a question of fact, but something that must be determined by the Court; thus, his interpretation should be excluded.

## CONCLUSION

For the reasons stated above, Kmart respectfully requests that the Court exclude the expert opinions of Mr. Dale A. Chamberlain in its entirety.

Respectfully submitted this 29th day of July, 2014.

>*/s/ Catherine M. O'Neil*
>Catherine M. O'Neil, *admitted pro hac vice*
>Georgia Bar No. 553714
>Christopher Burris, *admitted pro hac vice*
>Georgia Bar No. 097404
>Kristen A. Lynn, *admitted pro hac vice*
>Georgia Bar No. 702536
>KING & SPALDING LLP
>1180 Peachtree Street
>Atlanta, Georgia  30309
>(404) 572-4600 (p)
>(404) 572-5100 (f)
>
>**Counsel for Kmart Corporation**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES ex rel.<br>JAMES GARBE,<br><br>    Plaintiffs,<br><br>vs.<br><br>KMART CORPORATION,<br><br>    Defendant. | )<br>)<br>)<br>) Civil Action No. 3:12-cv-881-NJR-PMF<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2014, I served a copy of **Defendant Kmart Corporation's Motion to Exclude the Proferred Expert Testimony of Dale A. Chamberlain Under *Daubert* and Incorporated Memorandum of Law** upon opposing counsel via e-file system to:

KOREIN TILLERY

George A. Zelcs
205 N. Michigan Ave, Ste 1950
Chicago, IL 60601-5927

Stephen M. Tillery
Aaron M. Zigler
Robert L. King
One US Bank Plaza
505 N. 7th Street, Suite 3600
Saint Louis, MO 63101-1612

PHILLIPS & COHEN LLP

Erika A. Kelton
2000 Massachusetts Ave NW, Ste 100
Washington DC 20036-1015

Larry P. Zoglin
100 The Embarcadero, Ste 300
San Francisco, CA 94105-1226


        */s/ Catherine M. O'Neil*
        Catherine M. O'Neil