**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.* *ex rel.* JAMES GARBE, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Cause No. 3:12-cv-00881-NJR-RJD |
| KMART CORPORATION, | ) | |
| Defendant. | ) | |

---

**RELATOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON MATERIALITY AND INCORPORATED MEMORANDUM OF LAW**

---

This is the second of a series of three motions for summary judgment that Relator has filed on the various issues of Kmart's liability. This motion focuses on the materiality elements of the false statement causes of action Relator has asserted under 31 U.S.C. § 3729(a)(1)(B). Relator seeks a summary judgment on this issue declaring that Kmart's false statements (which are the subject of the first of the three summary judgment motions) were "material" within the meaning of the False Claims Act.

The core allegation in this case is that Kmart overcharges government health care programs and insurers for prescription drugs by claiming that its "usual and customary" prices for those drugs are higher than they really are. Overcharges to federally-funded government programs violate the False Claims Act. The FCA imposes liability on "any person who … knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. §§ 3729(a)(1) (B). The evidence developed in this case establishes beyond any genuine issue of material fact that Kmart's false statements of its usual and

customary prices had "a natural tendency to influence, or [were] capable of influencing, the payment or receipt of money," or in other words were "material."

Indeed, it is now law of the case that Kmart's misrepresentations of its usual and customary prices in support of its reimbursement requests to the Medicare Part D program were "material" within the meaning of the False Claims Act. It follows *a priori* that Kmart's misrepresentations of its "usual and customary" prices in support of its reimbursement requests to all of the government programs at issue were "material" within the meaning of the False Claims Act. Relator is therefore entitled to summary judgment on both of these liability issues.

**ARGUMENT**[1]

For a false claim or false statement to violate the FCA, it must be "material." Prior to 2009, materiality was not an express statutory requirement, but the courts had nonetheless read a materiality requirement into the statute. Under the case law, a statement was "material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008) (quoting *Neder v. United States*, 527 U.S. 1 (1999)). The 2009 amendments explicitly defined "material" in those same terms. To be material, a false claim need only be "*capable of influencing*, the payment *or receipt* of money or property." 31 U.S.C. § 3729(b)(4) (emphases added).

Moreover, the materiality standard is an objective one: the test is whether the omission *could have* influenced the payment decision. *Rogan*, 517 F.3d at 452 (the question is "whether the omission could have influenced the agency's decision. That's an objective standard ….").

---

[1] The same standard of review discussed in Relator's motion for summary judgment on the issue of false claims is applicable to the present motion. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015), and *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015).

"Testimony from a claims-processing officer along the lines of 'I follow the law' is not required." *Id.*

In the present case, the materiality of Kmart's overcharges and its false statements of its "usual and customary" prices is beyond any genuine dispute.

> Garbe is required to show only that Kmart's allegedly false claims were material to Kmart's receipt of more money than it should have gotten. In other words, Kmart's misstatements had to be "capable of influencing[] the decisionmaking body to which [they were] addressed."

*U.S. ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 639 (7th Cir. 2016) (quoting *Neder*, 527 U.S. at 16). Indeed, it is now the binding law of this case that "to the extent Kmart made false claims, *they were material*: those claims were the basis of the federal monies Kmart received." *Id.* (emphasis added).

The Seventh Circuit flatly rejected Kmart's argument that its price misrepresentations must be material to the Government itself, as opposed to a private entity that makes the actual payments to Kmart (which, by the way, was an argument limited to a single drug program, the Medicare Part D program).

> Kmart argues that there must be a "causal chain" between a false claim and a CMS payment, but it offers no support for such a rule. FERA had the effect of bringing within the FCA's ambit false claims to intermediaries or other private entities that either implement government programs or use government funds. *See* 31 U.S.C. § 3729(b)(2) (2009). There is little doubt that much of the money paid to Kmart under Medicare Part D came from government coffers. *See, e.g.*, *2014 Annual Report of the Boards of Trustees of the Federal Hospital Insurance and Federal Supplementary Medical Insurance Trust Funds* 103 (funds from U.S. Treasury made up 73.1% of total revenue disbursed by Medicare Part D trust fund in fiscal year 2013). Garbe is not required to trace the movement of currency from the U.S. Treasury through the Medicare Part D funding structure ….

*Id.* at 639. As the Seventh Circuit put it, "Kmart's argument in this respect is just presentment in materiality clothing," *id.*, but "as amended, the FCA contains no presentment requirement." *Id.* at

638 ("For any transactions to which FERA applies, Garbe is thus not required to show that any statement or record was delivered to any government employee, official, or entity. FCA liability attaches to any false claim to any entity—public or private—implementing a government program or a program using government funds.").

The Seventh Circuit also held that Kmart's price misrepresentations need not be material to the Government itself for another reason: because the FCA's "materiality rule requires only that the false record or statement influence the 'payment *or receipt* of money or property'—no government decision is required." *Id*. at 639 (emphasis in original). Kmart's own transaction records demonstrate that its overcharges and false statements were not only "capable of influencing[] the payment or receipt of money" to Kmart, but *in fact resulted* in the overpayment of millions of reimbursement claims amounting to hundreds of millions of dollars. *See* Doc. 324-3: Hay Report at 3, 13. *Garbe*, 824 F.3d at 637. ("Dr. Hay's examination revealed that Kmart instead used significantly higher prices when submitting those requests, and was thus reimbursed at a much higher level.").

On appeal Kmart effectively conceded the materiality of its price misrepresentations, acknowledging that they "*could* only *impact* the profits of a private entity." Doc. 12: Kmart's Opening Appellate Br. at 33-34 (emphases added) (available at https://ecf.ca7.uscourts.gov/docs1/00702532708). Because its price misrepresentations "could impact" the payment decisions of Plan Sponsors and PBMs who administer the Medicare Part D program, those misrepresentations were "capable of influencing, the payment or receipt of money or property"; in other words, they were "material." 31 U.S.C. § 3729(b)(4). Relator is thus entitled to summary judgment on the issue of materiality. There is no genuinely disputable issue about the materiality

of Kmart's misrepresentations of its usual and customary drug prices. They were unquestionably material.

The Supreme Court's decision in *Universal Health Services, Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989 (2016), does not change the analysis. In *Escobar*, the Court addressed the FCA's materiality requirement, noting three times in its opinion that it is a "rigorous" requirement. *Id*. at 1996, 2002, 2004 n.6. "[T]he Act defines 'material' to mean 'having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.'" *Id*. at 1996. The Court also wrote that "[t]he materiality standard is demanding." *Id*. at 2003. "Materiality … cannot be found where noncompliance is minor or insubstantial." *Id*. Moreover, *Escobar* requires "'strict enforcement of the Act's materiality … requirement[].'" *Id*. at 2002 (quoting *United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1270 (D.C. Cir. 2010)). "Under any understanding of the concept, materiality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" *Id*. (quoting 26 R. Lord, Williston on Contracts § 69:12, p. 549 (4th ed. 2003)).

The reason the Supreme Court emphasized the "rigorous" and "demanding" requirement of materiality (and scienter) that courts are to "strictly enforce" is because of the potentially expansive theory of liability it recognized in *Escobar*.

> This case concerns a theory of False Claims Act liability commonly referred to as "implied false certification." According to this theory, when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment. But if that claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement, so the theory goes, the defendant has made a misrepresentation that renders the claim "false or fraudulent" under § 3729(a)(1)(A).

136 S. Ct. at 1995. The defendant argued that "False Claims Act liability should be limited to undisclosed violations of expressly designated conditions of payment to provide defendants with

fair notice and to cabin liability," particularly given that entities like that defendant "are often subject to thousands of complex statutory and regulatory provisions." *Id*. at 2002.

It was in response to this defense argument that the Supreme Court emphasized the importance of the FCA's scienter and materiality requirements: "other parts of the False Claims Act allay Universal Health's concerns." *Id.* But "[i]nstead of adopting a circumscribed view of what it means for a claim to be false or fraudulent," the Court held that "concerns about fair notice and open-ended liability 'can be effectively addressed through strict enforcement of the Act's materiality and scienter requirements,'" noting that "[t]hose requirements are rigorous." *Id.* (quoting *Science Applications*, 626 F.3d at 1270).

Moreover, to say that the FCA's materiality requirement is a "rigorous" and "demanding" one to be strictly enforced, however, is not to say that it is invariably a difficult one to establish in every case. In some cases, materiality is obvious and easily established. For example, when the Government purchases firearms, that the "guns it orders must actually shoot" is "imperative"; indeed, "because a reasonable person would realize the imperative of a functioning firearm, a defendant's failure to appreciate the materiality of that condition would amount to 'deliberate ignorance' or 'reckless disregard' of the 'truth or falsity of the information' even if the Government did not spell this out." *Id*. at 2001-02.

So too here. Overcharging the Government for goods or services is an "archetypal," "paradigmatic" violation of the False Claims Act. *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). "Enacted in 1863, the False Claims Act 'was originally aimed principally at stopping the massive frauds perpetrated by large contractors during the Civil War,'" which included being "'charged exorbitant prices for goods delivered.'" *Escobar*, 136 S. Ct. at 1996

(quoting *United States v. Bornstein*, 423 U.S. 303, 309 (1976) and *United States v. McNinch*, 356 U.S. 595, 599 (1958)).

Kmart's price misrepresentations were "material" simply because Kmart asked for too much money, an act which is indisputably "capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). "There is FCA liability when a 'provider knowingly asks the Government to pay amounts it does not owe.'" *Mikes v. Straus*, 274 F.3d 687, 695 (2d Cir. 2001) (quoting *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)).

The Seventh Circuit concluded in this case that "to the extent Kmart made false claims, they were material," *Garbe*, 824 F.3d at 639, and nothing in *Escobar* casts any doubt on that holding. Kmart is bound by the Seventh Circuit's decision.

## CONCLUSION

Accordingly, Relator requests the Court to enter partial summary judgment in his favor on behalf of the United States as the real party in interest and against Defendant Kmart Corporation, holding that its misrepresentations of its usual and customary prices were "material" within the meaning of the False Claims Act.

Respectfully submitted,

**KOREIN TILLERY LLC**

Dated: April 24, 2017

/s *Robert L. King*
Stephen M. Tillery
Robert L. King
Aaron M. Zigler
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525
stillery@koreintillery.com
rking@koreintillery.com
azigler@koreintillery.com

George A. Zelcs
205 N. Michigan Ave., Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751
gzelcs@koreintillery.com

**PHILLIPS & COHEN LLP**

Erika A. Kelton
2000 Massachusetts Ave. NW, Suite 100
Washington, DC 20036
Telephone: (202) 833-4567
Facsimile: (202) 833-1815
ekelton@phillipsandcohen.com

Larry P. Zoglin
100 The Embarcadero, Suite 300
San Francisco, CA 94105
Telephone: (415) 836-9000
Facsimile: (415) 836-9001
lpz@pcsf.com

*Counsel for Relator*

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered users.

**KOREIN TILLERY LLC**

/s *Robert L. King*
Robert L. King
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525
rking@koreintillery.com